## EL PUEBLO v. MALDONADO.

APELACIÓN procedente de la Corte de Distrito de Ponce.

No. 256.—Resuelto en enero 12, 1911.

PRUEBAS—VIOLACIÓN—DECLARACIONES DE LA PERJUDICADA—TESTIMONIO DE REFERENCIA.—En una causa por violación, las declaraciones de la perjudicada al comisario o a los funcionarios de policía, constituyen testimonio de referencia y no son admisibles como prueba en el juicio.

ID.—INSTRUCCIONES AL JURADO.—En los casos en que se haya admitido una prueba improcedente, no solo debe eliminarse de los autos, sino que se debe instruir al jurado que no le preste consideración alguna, aunque en la mayor parte de los casos tal instrucción ha de solicitarse expresamente por el acusado.

ID.—En el caso de autos, la corte inferior ordenó se eliminaran ciertas manifestaciones hechas por la perjudicada a dos testigos, pero acordó que se hiciera constar en los autos que dichos testigos declararon solamente que la perjudicada formuló denuncia ante ellos, de haber sido violada. El tribunal resolvió que esta manifestación de la corte no había sido declarada por los testigos bajo juramento y no se había dado al acusado una oportunidad de repreguntarles sobre este extremo, constituyendo, por tanto, un error fundamental la resolución de la corte.

ID.—CORROBORACIÓN DEL TESTIMONIO DE LA MUJER PERJUDICADA.—En los casos de violación, el acusado no puede ser declarado culpable con el solo testimonio de la mujer ofendida, pues éste ha de estar corroborado con alguna otra prueba. La prueba de corroboración no ha de mostrar por sí misma todos los elementos del delito, pero debe tender a relacionar al acusado con el delito imputado.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Felipe Casalduc.*

Abogado del apelado : *Sr. Jesús M. Rossy, Fiscal.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

Ante la Corte de Distrito de Ponce, se acusó a Damián Maldonado de haber cometido el delito de violación en la persona de Catalina Espinosa, mujer que no era su esposa, y que estuvo impedida de oponer resistencia a causa de las amenazas de grave daño corporal que le hizo el acusado con un revólver que portaba. El juicio se celebró ante un jurado.

La acusadora privada declaró ser vecina de Juana Díaz, barrio de Capitanejo, de quince años, siendo su padrastro el acusado, que está casado con su madre; que dicho acusado con anterioridad al 23 de agosto de 1909, no la perseguía ni le hacía nada, viviendo tranquila en su casa, respetando ella al acusado como a un padre y que ella iba a la escuela; que en la madrugada del 23 de agosto, Damián Maldonado, se le fué a la cama y le puso un revólver en el pecho, estando oscuro y cuando despertó tenía el revólver en el pecho, y enseguida la apretó por el cuello, diciéndole que era él; que se callara y le tenía el revólver en el pecho, sabiendo que era revólver porque le tocó; le levantó la camisa y le apretó las piernas y se le acostó encima y sintió un dolor sin saber lo que le estaba haciendo, pues no había pensado en este acto, viviendo inocente, sin saber que un hombre hiciera semejante cosa a una mujer; que eso pasó un lunes y durante los días veinte y tres y veinte y cuatro siguió enamorándola y la amenazó de matarla con el revólver, y la pellizcaba cuando pasaba por su lado en los días veinte y tres y veinte y cuatro; y la mordía y la seguía persiguiendo y se fué a casa del comisario a declarárselo y detrás de ella llegó su madre y allí ella se enteró. El comisario dió parte a la policía y fué reconocida por el Doctor Torres; y desde entonces para acá la perseguía su madre y la aconsejaba que declarara a favor de Damián Maldonado; que hasta el veinte y tres de agosto, no había realizado acto alguno con otra persona, sabiendo ahora lo que un hombre puede hacer con una mujer y que el acusado realizó actos carnales

con ella y que sintió dolor cuando el acusado le introdujo algo
dentro de las piernas que penetró dentro de su cuerpo; que
cuando ocurrieron los hechos, el acusado Damián Maldonado,
vivía con la madre de ella, llamada María Rosario Tirado,
teniendo la casa dos habitaciones, siendo una sala y otra dor-
mitorio y en el dormitorio dormían esa noche, cuando ocurrió
el suceso, ella, Damián, su madre y sus dos hermanos, siendo
el salón dormitorio como este local.    Que cuando le puso el
revólver en el pecho le cogió la mano y luego él le puso la ma-
no en el cuello y le dijo "cállate," y cuando le puso la mano
en el cuello le quitó el revólver del pecho y no sabe lo que Da-
mián hizo con el revólver, pero siguió sujetándola por el cuello
y le abrió las piernas, y mientras esto sucedía, el acusado le
dijo "cállate" y no le dijo que la mataba; y cuando el acusado
le dijo que se callara, la madre de ella y sus hermanos estaban
en la misma habitación, sin que nadie sintiera nada, pasando
todo en silencio; habiendo tres catres en la habitación, uno en
el que dormía Damián; otro de la madre de ella y sus herma-
nos en que dormían ellos y otro de ella, en el que ella dormía.

Una parte de esta prueba, evidentemente fué descubierta
por medio de repreguntas; y la testigo hizo algunas declara-
ciones de menos importancia que eran insignificantes o meras
repeticiones, tales como dónde estaba su escuela, y lo que ella
hacía allí.

Luego el Dr. Torres declaró que había reconocido a Cata-
lina Espinosa y que había encontrado rasgadura de la mem-
brana himen, y que dicha membrana debió haber sido rota re-
cientemente, como dos, tres o cuatro días antes del reconoci-
miento, según el estado de las cicatrices.

Aparece, después, en la exposición del caso, lo siguiente:
Jose Luciano Levis. (Testigo del Fiscal). Comisario del
barrio de Capitanejo, y que ejercía ese cargo el 25 de agosto
de 1909.    Por orden de la corte, se hace constar, que este
testigo sólo ha declarado que Catalina Espinosa se le quejó
el veinte y cinco de agosto de que había sido violada el veinte
y tres de agosto de mil novecientos nueve.    Julio C. Acosta.

(Testigo del Fiscal.)    Policía insular de servicio en Juana Díaz, el 25 de agosto de 1909.    Por orden de la corte, se hace constar que este testigo sólo ha declarado que Catalina Espinosa, se le quejó el 25 de agosto de que había sido desflorada. A las preguntas de la defensa, este testigo declaró en el sentido de que mientras estaba haciendo la investigación, el acusado se fugó, y que dicho acusado tuvo la intención de fugarse porque montó en un caballo, y luego se le encontró en una tienda de provisiones en Juana Díaz; pero que no estuvo presente cuando Catalina le hizo la acusación.

Estos dos testigos, cuando fueron examinados por primera vez, declararon con respecto a algunas de las cosas que Catalina Espinosa les había dicho, a saber, que su padrastro la había violado, y otros pormenores.

El acusado pidió que se eliminaran de los autos, las referidas declaraciones, por ser de referencia, y entonces el tribunal ordenó que se eliminaran las declaraciones que habían dado lugar a las objeciones hechas por el acusado, y dictó con respecto a las declaraciones de dichos testigos, las órdenes que hemos consignado anteriormente.    El acusado se opuso a la resolución de la corte, y preparó por separado un pliego de excepciones para revisar la misma.

Las declaraciones referentes a lo que la acusadora privada dijo al comisario y al policía con respecto a los actos específicos realizados por el acusado, nombrando a este último, fueron claramente inadmisibles.    (*People* v. *Wilmot,* 139 Cal., 103.)

Como quiera que sea, se plantea la cuestión de si el error fué subsanado por lo que la corte substituyó por las referidas declaraciones.    Parece que las autoridades indican que no solamente debe eliminarse de los autos la declaración contra la cual se ha hecho una objeción, sino que debe decírsele al jurado que no la tome en consideración.    (*Barth* v. *State,* 39 Texas Criminal Reports, 381; 73 Am. St. Rep. 935; *People* v. *Prather,* 134 Cal. Rep., 349; American Digest Decennial, vol. 6, p. 1169.)    En la mayoría de los casos, puede ser necesa-

rio que el acusado pida para el jurado instrucciones especí-
ficas sobre este particular; pero en el presente caso, no sola-
mente se omitió instruir al jurado, sino que la corte consignó
en los autos una declaración con respecto a la cual los testigos
no habían prestado juramento. De este modo no hubo la de-
bida confrontación; los testigos no estuvieron sujetos a repre-
guntas; y sería dudoso si estarían sujetos a pena alguna por
perjurio, si resultaren falsas las declaraciones que en su nom-
bre hizo el tribunal.

El jurado quedó con la impresión producida por las de-
claraciones indebidamente hechas, y cualquiera que haya sido
esa impresión, nos vemos obligados a declarar que todo el
proceder de la corte constituyó un error fundamental. Pero
hay otro aspecto del caso que quizás es más grave. La ley de
1909 (Leyes de la Asamblea Legislativa de 1909, pág. 139),
dispone:

"Ley para enmendar el artículo 250 del Código de Enjuiciamiento
Criminal. Decrétese por la Asamblea Legislativa de Puerto Rico.

"Sección 1.—El artículo 250 del Código de Enjuiciamiento Cri-
minal, queda por la presente enmendado en la siguiente forma:

"Art. 250.—En juicio por el delito de promover o intentar la pro-
moción de un aborto, o por contribuir o ayudar en su perpetración, por
seducir con engaño, corromper por medio de halago o apoderarse de
una mujer soltera, menor de veinte y cinco años, hasta entonces repu-
tada por casta, con objeto de prostituirla, o contribuir y ayudar a ese
fin, o en juicio por el delito de seducción bajo promesa de matrimonio,
o por violación, el acusado no podrá ser declarado convicto por la
declaración de la mujer agraviada, a menos que su declaración se
corrobore con otras pruebas.

"Sección 2.—Toda ley o parte de ley que se opusiere a la presente,
queda derogada.

"Sección 3.—Esta ley empezará a regir desde el momento de su
aprobación.

"Aprobada en 11 de marzo de 1909."

¿Fué corroborada la declaración de la acusadora privada
en alguna parte esencial? ¿Existía en los autos, además de
su declaración o de su demanda, algún dato que tendiera a

relacionar al acusado con el delito? Su demanda, aún en el caso de que hubiera sido debidamente presentada, meramente tiende a refutar la idea de que el acceso a su cuerpo fuera realizado con su consentimiento. No se hizo esfuerzo alguno para probar independientemente que el acusado era su padrastro o que poseía un revólver. No se hizo esfuerzo alguno para demostrar la forma de construcción de la casa en que según se alegaba, había sido cometido el delito, ni la posibilidad de realizar en silencio los actos que dieron lugar a la acusación formulada por la demandante. No había ninguna prueba independiente con respecto a su edad o modo de vivir, o la posibilidad o probabilidad de que ella estuviera libre del acceso de otros hombres. El mero hecho de que la demandante haya sido violada, si es que lo ha sido, no tiende a demostrar que el acusado era culpable; y la declaración del médico solamente tiende a demostrar que alguien ha tenido acceso carnal a ella. La prueba con respecto a la alegada fuga del acusado es demasiado vaga, remota e inconexa para que pueda tener tendencia alguna a probar la culpabilidad del acusado. La ley exige declaraciones corroborantes. Sin embargo, no es necesario que las declaraciones corroborantes por sí prueben todos los puntos esenciales del delito imputado al acusado. Pero dichas declaraciones deben por sí, tender a demostrar la relación que exista entre el acusado y el delito. Los tribunales de los Estados Unidos tenían la tendencia de exigir la corroboración aún antes del establecimiento de una ley (en tal sentido) como puede verse, en la nota de la página 744 del tomo 6 de la obra "American & English Ann. Cases." Sin embargo, varios Estados tienen leyes semejantes a la nuestra; y, en esos Estados, el peso de pruebas que se exige para la corroboración de la declaración de la denunciante, es invariablemente mayor que la que se ha presentado en el caso que nos ocupa. El artículo 283 del Código Penal de Nueva York, dispone: "Nadie puede ser declarado culpable de rapto, matrimonio compulsorio, violación o estupro, en virtud de la declaración de la mujer raptada, compelida o estuprada si dicha

declaración no está sostenida por otras pruebas.'' La citada ley no especifica el peso de las pruebas corroborantes ni la naturaleza o carácter de éstas, en forma más amplia que nuestra propia ley. En el caso de *The People* v. *Terwilliger,* 74 Hun., p. 310, se establece la regla de que el apoyo o la corroboración exigida, debe ser la misma que se considera necesaria para corroborar la declaración de un cómplice, a saber, corroboración mediante otras pruebas que tiendan a demostrar la relación que exista entre el acusado y la comisión del delito. Otros casos resueltos en el mismo sentido, son: *The People* v. *Haischer,* 81 Appellate Div. Rep., 561; *State* v. *Chapman,* 88 Iowa, 254, 56 N. W. Rep.; 489; *State* v. *Stowell,* 60 Iowa, 538, 15 N. W. Rep.; 417. (Véase especialmente la nota L. R. A. [N. S.] vol. 26, p. 1149.)

Por los errores de que hemos hecho mención, debe revocarse la sentencia y devolverse la causa para la celebración de un nuevo juicio.

*Revocada.*

Jueces concurrentes: Sres. Asociados MacLeary y del Toro.

El Juez Presidente, Sr. Hernández, no intervino en la resolución de este caso.