EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CARLOS PIMENTEL HERNÁNDEZ, acusado y apelante.

Núm. 12561.—*Sometido:* Febrero 3, 1948. *Resuelto:* Abril 21, 1948.

*R. A. Arroyo Ríos*, abogado del apelante; *Hon. Procurador General Luis Negrón Fernández* y *J. Rivera Barreras, Fiscal del Tribunal Supremo*, abogados de El Pueblo, apelado.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Este recurso fué interpuesto contra una sentencia de 1 a 10 años de presidio por un delito de violación.[1]   El único error señalado consiste en que la sentencia es contraria a derecho y a la prueba.   Como la contención del apelante está predicada en que la prueba no demuestra que la perjudicada opuso resistencia y que ésta fué vencida por fuerza o violencia, precisa hacer una reseña de la prueba, especialmente de la que se refiere a la resistencia por parte de la ofendida.

De la declaración de Candelaria Díaz, la perjudicada, resulta que ella es una mujer casada, que tiene tres hijos y que el 19 de septiembre de 1946 vivía en el Barrio Río Abajo, del municipio de Las Piedras; que en la fecha indicada estuvo en Fajardo, de donde salió por la tarde de regreso a su hogar, para llegar al cual, tenía que pasar por Naguabo; que llegó a Naguabo en una guagua como a las 6 p.m.; que allí habló con un policía para que le consiguiese un asiento en una guagua para seguir su viaje; que no pudo encontrar guagua, pero el apelante o uno de sus compañeros, le consiguió un asiento en un automóvil en calidad de pasajera; que el automóvil era cerrado y de dos puertas; que ella ocupó el asiento de atrás y allí también montaron el apelante y el otro supuesto pasajero, quedando el chófer en el asiento delantero; que ella no conocía a ninguno de

---

[1]La acusación se presentó contra el apelante y dos más, pero éstos fueron juzgados en juicio por separado.

los tres hombres; que tan pronto salieron de Naguabo éstos empezaron a luchar con ella para tener contacto carnal; que apagaron las luces y se quitaron los pantalones; que los tres a la vez querían abusar de ella; que le echaron los brazos y le quitaron los "panties" y la pusieron boca arriba en el carro; que ella gritaba y pedía auxilio sin resultado alguno y que el apelante fué el primero en tener contacto carnal con ella; que éste la amenazaba con partirle "el cogote" si no accedía a sus deseos; que le partieron un zapato y la llevaron a una pieza de caña y allí siguieron ultrajándola los tres hombres; que luego volvieron a llevarla al automóvil y uno de ellos por la fuerza la sentó en su falda y tuvo contacto carnal con ella contra natura; que los tres individuos la dejaron en la carretera frente a una tienda más abajo de Río Blanco y don Miguel Mendoza fué quien la llevó al Pueblito del Río.

La ofendida en su testimonio oral se refiere constantemente a su lucha con los tres hombres para impedir los actos bestiales de que fué víctima, pero no especifica en que consistió su lucha. En cambio, la resistencia que opuso la ofendida surge con suficientes detalles de la declaración que el propio apelante prestó ante el Juez de Paz de Naguabo el 20 de septiembre de 1946. Esa declaración fué presentada en evidencia por el Fiscal y considerando la luz que arroja sobre el punto controvertido por el apelante, la copiaremos textualmente a continuación:

"Declaración Jurada de Carlos Pimentel Hernández.—En Naguabo, P. R., a los 20 días del mes de septiembre de 1946, ante esta corte comparece Carlos Pimentel Hernández, mayor de edad, soltero, vecino de Naguabo, P. R., y previo juramento conforme a la ley, dice: Que mi nombre y demás circunstancias personales son como dejo dicho; que he sido advertido del derecho que me asiste, como presunto acusado, de declarar o no en este caso y que de hacerlo, mi declaración puede utilizarse en pro o en contra, derecho que renuncio y expongo mi deseo de declarar lo siguiente:

"Que el día 19 de septiembre de 1946, a eso de las siete y media o las ocho de la noche, me hallaba pendiente de entrar al cine; que vi una mujer blanca, delgada, que hablaba con el cabo de la policía, Sr. José Colón; que dicha mujer estaba buscando en qué conducirse a Las Piedras; que vi cuando Luis Medina Ramos, un muchacho que se dedica a componer gomas de automóviles, le dijo a la señora Candelaria Díaz Sierra, o fuera la misma mujer que hablaba con el Cabo Colón, que la siguiera, que le había conseguido carro para llevarla; que la señora de referencia siguió detrás de él, de Luis Medina, y yo me les fuí detrás; que llegaron hasta la tienda 'La Quincallita' en la calle Baldorioty de Naguabo donde estaba parado un automóvil que guía el chófer Rafael Peña López; que entonces dicho Rafael Peña y Luis Medina le dijeron a la señora que se montara, que la iban a llevar; que no vi que trataran sobre precio de viaje; ni nada por el estilo; que Luis Medina me pidió una peseta prestada y se la dí y con otra peseta que tenía le echó dos galones de gasolina al carro de referencia; que partimos en dirección a Las Piedras, por la carretera que conduce a Juncos; que cuando llegamos a Peña Pobre, vi que las luces del carro se apagaron; que entonces le dije al chófer: '¿qué pasa, Rafael?' y él tocándome un muslo me dió a entender que me callara, fué entonces que me di cuenta de que había algo sospechoso en el viaje; que luego el chófer Rafael Peña cogió la dirección de la carretera de Pita Haya y se internó por un callejón; *que antes de eso vi que cuando se apagaron las luces del carro, Luis Medina y también el chófer Rafael Peña López, trataron de tener comercio carnal con la señora Candelaria Díaz, pero que ella rehusó y no hubo nada;* que más tarde cuando llegamos al callejón fué que de nuevo Rafael trató de tener comercio carnal con la mujer y se quitó los pantalones *y luchó por hacerlo, acostaba la mujer, pero la mujer se paraba, él la agarraba de nuevo, la vencía y cuando (sic) a hacerlo, la mujer se defendía y Rafael no logró hacer nada;* que entonces, yo, el declarante, traté de hacerlo, pero sin hacer fuerza y cuando vi la mujer no quería me retiré y *fué entonces que Luis Medina entró al carro y en el asiento trasero, la cogió en la falda, le quitó los bloomers a la fuerza y realizó de esa manera acto carnal con dicha mujer; que estoy en la creencia de que también lo hizo por la parte de atrás, o sea, el recto, porque (sic) le penetró, ella gritó; que primeramente lo hizo de frente con ella, acostándosele*

*encima y luego cuando forcejeaban por levantarse, fué que la cogió en la falda haciéndolo por atrás.*([2])   Que lo declarado es la verdad, lo que juro y firmo.''

.En apoyo de su contención el apelante invoca el artículo 255(4) del Código Penal que dice así:

''Artículo 255.—Se comete violación, yaciendo con una mujer que no fuere la propia, en cualquiera de los casos siguientes:

''.

''4. Si opusiere resistencia, pero ésta fuere vencida por fuerza o violencia.''

Invoca además el acusado el caso de *Pueblo* v. *Rodríguez*, 66 D.P.R. 934 en el cual dijimos:

''Conforme prescribe el artículo transcrito [Art. 255 del Código Penal] la resistencia por parte de la mujer es un elemento esencial del delito. Si no la hay se entenderá que el acto se ha realizado con su consentimiento. La mera negativa a consentir no es suficiente. La resistencia debe ser real y de tal grado que sólo sea vencida por fuerza o violencia, a menos que la mujer estuviere impedida de oponerla a causa de amenazas de grave e inmediato daño corporal, acompañadas de la aparente aptitud para ejecutarlos.''

Ya hemos visto, por la declaración del apelante, cómo por la fuerza fué vencida la resistencia opuesta por la ofendida. Es verdad que en su declaración el apelante trata de exculparse imputando toda la culpa a sus compañeros, limitándose a admitir que él también trató de realizar actos carnales con la perjudicada después que sus compañeros lo habían hecho, pero ''sin hacer fuerza'' y cuando vió que ella no quería se retiró.

¿Qué más resistencia podía oponer una mujer indefensa en su lucha contra estos tres hombres ansiosos de tener contacto carnal con ella? ¿Es que el apelante pretende que la

----

([2]) A este efecto declaró el Dr. Rafael Domínguez que Candelaria Díaz fué llevada al hospital en un estado de profunda depresión en la mañana del 20 de septiembre de 1946; que él le examinó sus órganos sexuales y tomó muestras de secreción genital, las cuales examinó microscópicamente, y que en la región perianal tenía laceraciones bastantes marcadas.

mujer se defendiera con sus puños contra tres hombres, arriesgándose sin duda a recibir grave daño corporal o quizás la muerte?

El caso de *Pueblo* v. *Rodríguez,* supra, no tiene el alcance que quiere darle el apelante. Lo que ese caso resuelve es que la resistencia "sea real y de tal grado que sólo sea vencida por fuerza o violencia, a menos que la mujer estuviere impedida de oponerla a causa de amenazas de grave e inmediato daño corporal, acompañadas de la aparente aptitud para ejecutarlos."

Ese caso contempla dos situaciones distintas: (*a*) que la resistencia de la mujer sea vencida por la fuerza, como lo fué en el presente caso; o (*b*) que la mujer no opusiere resistencia por estar impedida de hacerlo a virtud de amenazas de grave e inminente daño corporal. La primera modalidad quedó cumplida pues se probó por la declaración de la ofendida y por la del propio apelante que ella opuso toda la resistencia que podía oponer dentro de las circunstancias. Es verdad que el apelante niega haber realizado actos carnales con ella, pero es lo cierto según su declaración que en los momentos en que la mujer trataba de conseguir un asiento de automóvil para trasladarse a su hogar el apelante se hallaba pendiente de entrar al cine y sin embargo cambió sus planes para seguir a sus dos compañeros sin que de los autos resulten los motivos para ello y se unió a la aventura que ellos iban a emprender. Según su declaración él estuvo todo el tiempo acompañando a los otros dos sobre quienes ahora pretende descargar toda la culpa y la mujer, como hemos visto, declaró que él no se limitó a hacerle proposiciones sino que fué el primero en realizar el acto con ella contra su voluntad y venciendo su resistencia por la fuerza.

*El único error que señala el apelante no existe y no apareciendo que se hubiere cometido cualquier otro que produzca la revocación de la sentencia, procede su confirmación.*