EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN COLÓN VIDAL, acusado y apelante.

Número 16445.

*Sometido:* 29 de febrero de 1960. *Resuelto:* 25 de mayo de 1960.

*Antonio J. Matta* y *Benjamín Guerra-Mondragón,* abogados del apelante; *Hon. Secretario de Justicia Hiram R. Cancio (J.B. Fernández Badillo, Ex Secretario de Justicia, Arturo Estrella, Secretario Auxiliar de Justicia* y *Alfredo Archilla Guenard* y *William Fred Santiago, Fiscal* y *Fiscal Auxiliar del Tribunal Supremo,* respectivamente, en el alegato), abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El apelante Juan Colón Vidal fue acusado, convicto y sentenciado por un delito de violación consistente en haber tenido contacto carnal con la mujer que no era su esposa María Elena de Arce Chico por medio de amenazas, fuerza y violencia.

La única cuestión a resolver en este recurso, por ser la que daría lugar a la revocación de la sentencia apelada, es la de si la declaración de la mujer agraviada fue corroborada con otras pruebas según lo exige el art. 250 del Código de Enjuiciamiento Criminal [34 L.P.R.A., sec. 729].(1) Es imperioso, pues, que hagamos un resumen de la prueba.

La de cargo consistió en los testimonios de María Elena Arce, Felícita Figueroa y Carmen María Cintrón y la de defensa en los testimonios de Dominga Chico Cintrón y del acusado Juan Colón Vidal.

El fiscal de este Tribunal resume correctamente dicha prueba en la siguiente forma:

"La perjudicada en su testimonio y a preguntas del Fiscal manifestó lo siguiente:

"No haberse casado nunca y conocer al acusado. Dijo que vivía en la casa del acusado para agosto de 1956 en el barrio Río Abajo de Ceiba, y también con Dominga Chico quien es su mamá y esposa del acusado. Que en agosto del 56 su mamá salió para el pueblo, y 'nos dejó solos al acusado y a mí. El acusado me pidió un pote de agua cuando estaba arriba en la sala sentado en la cama. Cuando le llevé el agua me empuñó por un brazo.' (T. E. 6) Cuando la empuñó el acusado estaba callado, y botó el pote de agua. Me dijo 'Que si no se lo daba me mataba.' (T.E. 7.) Me dijo además que 'si gritaba me mataba.' (T.E. 7.) Todo esto sucedió antes de almuerzo. Dijo que cerca de su casa no quedaba ninguna casa. Cuando se le preguntó que si ella aceptó, dijo: 'Yo hice fuerza pero él me llevó por la fuerza.' (T. E. 8.) Dijo que como él tenía más fuerza que ella le hizo el daño. Manifestó que ella era señorita. Dijo que no pudo gritar o fugarse porque él le dijo que 'si gri-

---

(1) "§729. Aborto, seducción, etc.; corroboración de la declaración de la perjudicada.

"En juicio por el delito de promover o intentar la promoción de un aborto, o por contribuir o ayudar en su perpetración, por seducir con engaño, corromper por medio de halago o apoderarse de una mujer soltera, menor de veinticinco años, hasta entonces reputada por casta, con objeto de prostituirla, o contribuir y ayudar a ese fin, o en juicio por el delito de seducción bajo promesa de matrimonio, o por violación, el acusado no podrá ser declarado convicto por la declaración de la mujer agraviada, a menos que su declaración se corrobore con otras pruebas."—(Código Enj. Criminal, 1935, art. 250.) 34 L.P.R.A. 183.

taba me mataba'. Indicó que la mamá llegó por la tarde y que antes de llegar su mamá, por allí no llegó nadie más. Que al llegar su mamá ella se lo dijo y su mamá le dijo 'que me quedara callada la boca'. (T. E. 9.) No se lo dijo a nadie más porque no la dejaban salir ninguno de ellos dos. Dijo que el acusado después de eso se portaba mal. Que ella salió encinta y tuvo un niño en mayo del señor Juan Colón. Que el acusado le hizo 'eso' dos veces nada más; (T. E. 10) todas esas veces contra su gusto.

"En el contrainterrogatorio la perjudicada declaró que ella le dió cuenta a las autoridades por primera vez, antes de nacer el niño. La fecha por estipulación de las partes se señaló como que el 12 de febrero de 1957 ella declaró por primera vez ante el Juez Vicente Montes de Ceiba. Declaró que ella se fue a vivir después a casa de sus tíos; que nunca había visitado el pueblo de Fajardo con don Juan (el acusado) ni había estado tampoco en una calle que se llama La Culebra. Dijo que tampoco había estado en la casa de Juan Nena; que ella no había abortado y que tampoco había estado en casa de Farruco con don Juan. Que ella le dijo a su mamá que su padrastro le había hecho el daño y que la mamá le dijo que se quedara callada la boca. (T. E. 13.) Dijo que el día que el acusado le hizo el daño éste tenía un sable. (T. E. 14.) Volvió a repetir que el acusado le dijo que si gritaba la mataba. Dijo saber que don Juan era inútil de un brazo. Dijo que tampoco había ido a Caguas con don Juan. Que ella misma fue donde el Juez de Ceiba. Volvió a repetir que ese día que su mamá salió para el pueblo el acusado le pidió un pote de agua y que cuando ella se lo dió el acusado 'me echó mano por un brazo', y que tenía un mocho en la mano. (T. E. 16.) No supo explicar por qué antes había dicho que había un sable en un tabique y ahora decía que el acusado tenía un mocho en la mano. A preguntas del Ministerio Fiscal indicó que cuando ella fue a buscar una leche, una prima le dijo que mandara la leche con otra persona y que fuera con ella para donde el doctor. Que no le había dicho nada a su prima de lo que le había sucedido porque 'no me dejaban salir a ningún sitio'. (T. E. 19.) Preguntada por la defensa cuánto tiempo después de haber hablado con la prima fue que ella vino donde el Juez, dijo que el mismo día, (T. E. 20) y que eso sucedió el mismo día que ella se fue de la casa. (T. E. 21.)

"La declaración de Felícita Figueroa se reprodujo por estipulación ya que ésta estaba en Estados Unidos. (T. E. 22.) Exhibit 1 de El Pueblo, (T. E. 44–46.)

### "Declaración de Carmen María Cintrón

"Dijo conocer al acusado y a la perjudicada. Manifestó que el acusado 'me dijo que le había hecho el daño'. (T. E. 23.)

"A preguntas de la defensa declaró que el acusado no le dijo la fecha en que había pasado eso ni el sitio. Solamente le dijo que él le había hecho el daño y 'advirtió que estaba ella embarazada'. (T. E. 24.)

"La prueba del acusado consistió en la declaración de Dominga Chico Cintrón, madre de la perjudicada y concubina del acusado y en la declaración del propio acusado.

### "Declaración de Dominga Chico Cintrón

"Declaró que ella no estaba casada con el acusado pero que hace como 20 años que viven juntos, procreando 5 hijos. María Elena (la perjudicada) vino a vivir con ellos cuando tenía como 11 años y que ella buscaba y salía detrás del acusado siempre, dondequiera que él iba. Dijo que su hija había tenido un aborto del acusado. (T. E. 27.) Que después del aborto siguió teniendo relaciones con el acusado y que la perjudicada nunca le dijo a ella que estaba encinta del acusado, negándole en todo momento que viviera con el acusado. Dijo que la perjudicada se fue de la casa cuando salió encinta. Dijo que el acusado es inútil de un brazo y que nunca su hija le dijo que el acusado había abusado de ella.

"A preguntas del Fiscal dijo que ella quería mucho a su esposo y que la perjudicada vino a vivir a la casa de ellos cuando tenía 11 años y que ésta siempre estaba detrás del acusado. Que lo del aborto quien se lo dijo a ella fue el acusado y no la perjudicada. Que cuando arrestaron al acusado éste le dijo 'que ella estaba encinta de él'. (T. E. 35.)

### "Declaración de Juan Colón Vidal

"Manifestó que la perjudicada vino al poder de él cuando ella tenía 11 años. Que él ha tenido relaciones de hombre y mujer con ella siendo la primera vez cuando fueron a Fajardo. Indicó que él siempre 'la estaba traqueteando y yo siempre hacía lo que quería con ella'. (T. E. 35.) Que entraron a la casa de Farruco; que también la llevó a la casa de Juan Nena en la Calle La Culebra y también a Caguas y en el campo muchas veces. (T. E. 36.) Dijo que ella había tenido un aborto

de él. Al serle preguntado que en cuantas ocasiones había tenido relaciones con la perjudicada contestó que 'miles de miles'. (T. E. 41.) Que el niño que nació en mayo es hijo de él y que la muchacha se le entregó a él sin necesidad de amenazas. Declaró es inútil de la mano derecha.

"A preguntas del Fiscal indicó que la primera vez que tuvo relaciones con la perjudicada fue en Fajardo en la casa de Farruco y también en la finca de él y que la perjudicada 'fue la culpable de todo porque ella me obligaba a mí'. (T. E. 43.) Indicó que los tíos de la perjudicada son los que 'le metieron en la cabeza que lo dijera y también que declarara'. (T. E. 43.)" (Informe del Fiscal, páginas 3, 4 y 5.)

De acuerdo con el anterior resumen de la prueba es incuestionable que el testimonio de la mujer agraviada quedó corroborado únicamente en cuanto a un hecho esencial, a saber, que el acusado apelante tuvo contacto carnal con ella. La prueba de corroboración de ese hecho consiste en la admisión hecha por el acusado a la testigo Felícita Figueroa al efecto de que María Elena Arce estaba encinta de él, así como la otra admisión que le hizo a la testigo Carmen María Cintrón de que él le había hecho el daño a María Elena. Además el propio acusado admitió en la silla de los testigos que él había tenido relaciones sexuales con la mujer agraviada.

En la modalidad que se imputó al acusado se comete el delito de violación yaciendo con una mujer que no fuere la propia si ésta estuviere impedida de oponer resistencia a causa de amenazas de grave e inmediato daño corporal, acompañadas de la aparente aptitud para ejecutarlas o si opusiere resistencia, pero ésta fuere vencida por fuerza o violencia. Art. 225 del Código Penal [33 L.P.R.A., sec. 961]. De suerte que en un caso como el de autos la prueba incriminatoria, constitutiva del delito de violación debe establecer (1) que el acusado yació con una mujer que no era la propia, y (2) que la mujer opuso resistencia real y de tal grado que sólo fue vencida por fuerza o violencia o que la mujer estuvo impedida de oponerla a causa de amenazas de grave e inmediato daño corporal, acompañadas de la aparente aptitud

para ejecutarlas. La resistencia, por lo tanto, es un elemento esencial del delito de violación imputado al acusado. *Pueblo* v. *Pimentel*, 68 D.P.R. 633; *Pueblo* v. *Rodríguez*, 66 D.P.R. 934. Por eso, si como resultado de la aplicación ·de la regla de corroboración, lo que la prueba establece es solamente el hecho de que el acusado tuvo relaciones sexuales con María Elena, tal hecho, sin más, no constituiría un delito público, por no estar dicho acto penalizado por nuestras leyes, a menos que concurran otras circunstancias que no están aquí presentes.

 En ocasiones anteriores hemos resuelto que las otras pruebas de corroboración que exige el art. 250 del Código de Enjuiciamiento Criminal deben demostrar la relación que exista entre el acusado y la comisión del delito. En otras palabras, las pruebas de corroboración deben relacionar al acusado con la comisión del delito. *El Pueblo* v. *Maldonado*, 17 D.P.R. 23; *Pueblo* v. *De Jesús*, 18 D.P.R. 591; *Pueblo* v. *Santiago*, 36 D.P.R. 639; *Pueblo* v. *Rodríguez*, 22 D.P.R. 104; *Pueblo* v. *Márquez*, 64 D.P.R. 371; *Pueblo* v. *Baerga*, 70 D.P.R. 90. También hemos dicho que la corroboración exigida por el art. 250 debe ser la misma que se considera necesaria para corroborar la declaración de un cómplice. *Pueblo* v. *Maldonado*, supra, y *Pueblo* v. *Márquez*, supra. Hemos resuelto además en los casos arriba citados y en otros más, entre ellos, el de *Pueblo* v. *Adorno*, 81 D.P.R. 518, que no se requiere prueba de corroboración para todos los elementos del delito, siempre que sea suficiente para relacionar al acusado con su comisión. Algunas de nuestras decisiones en vez de referirse a los elementos del delito, más bien lo que indican es que la declaración de· la mujer agraviada no precisa de corroboración en todos y cada uno de los detalles, sino la que basta para relacionar al acusado con el delito que se le imputa. *Pueblo* v. *De Jesús*, 30 D.P.R. 235; *Pueblo* v. *Rosario*, 25 D.P.R. 725; *Pueblo* v. *Vázquez*, 40 D.P.R. 258.

En los casos de *Pueblo* v. *López*, 24 D.P.R. 437, *Pueblo* v. *Rosario*, supra, y *Pueblo* v. *Morales*, 30 D.P.R. 292, resol-

vimos que en el delito de seducción hay dos elementos que son igualmente importantes: la seducción y la promesa de matrimonio, y que debe haber prueba que tienda a corroborar cada uno de dichos elementos. En el caso de *Morales*, supra, se dijo además, que igual regla de corroboración era aplicable a los casos de violación y que dicha regla había sido aplicada en el caso de *Pueblo* v. *De Jesús*, supra, en que se imputó al acusado el delito de violación.

Según ya hemos dicho en el delito de violación, en la modalidad que se imputa al apelante hay, lo mismo que en el delito de seducción, dos elementos que son igualmente importantes: el acto carnal y el uso de amenazas, fuerza o violencia. No hay razón para diferenciar los casos de seducción de los de violación en cuanto a la aplicabilidad de la regla de corroboración a los dos elementos de cada uno de los delitos.

El caso de *Pueblo* v. *Márquez*, supra, parece dar la impresión de que la prueba de corroboración es suficiente si relaciona al acusado con uno de los elementos del delito de violación. Sin embargo, a poco que se analice la opinión emitida en dicho caso, se verá que por el contrario, está en armonía con la doctrina que aplica la regla de corroboración a ambos elementos del delito. El allí acusado fue convicto de haber violado a una mujer mayor de catorce años, realizando con ella actos carnales valiéndose de la fuerza y la violencia. El acusado declaró en el juicio que él había tenido relaciones sexuales con la mujer agraviada con su consentimiento y sin que ella opusiera resistencia. Debido a la errónea admisión de cierta evidencia, la sentencia condenatoria fue revocada en apelación ordenándose la celebración de un nuevo juicio. Sin embargo, este Tribunal dijo en dicho caso que el testimonio del padre de la perjudicada al efecto de que él había oído decir a los acusados "que Ana (la perjudicada) era una tonta y boba, que ellos se habían burlado de ella", era prueba de corroboración suficiente para relacionar a los acusados con la comisión del delito de violación. Esa fue la única

prueba de corroboración presentada ya que este Tribunal resolvió que el testimonio de la madre de la perjudicada sobre las manifestaciones que le había hecho su hija, no era admisible en evidencia por no ser dichas manifestaciones parte del *res gestae.*

No podía considerarse que las admisiones de los acusados eran prueba de corroboración del primer elemento del delito de violación, o sea, del acto sexual, porque sobre ese extremo el propio acusado declaró admitiendo que él había tenido contacto carnal con la mujer agraviada. Por lo tanto, al decir este Tribunal que tales admisiones, relacionaban a los acusados con la comisión del delito, necesariamente tenían que referirse a la corroboración del segundo elemento del delito, esto es, la fuerza o violencia, aunque es bastante dudoso que de la frase "que Ana es una tonta y boba, que ellos se habían burlado de ella", puede inferirse que los acusados tuvieran relaciones sexuales con Ana mediante la fuerza o violencia. (²)

En el presente caso el acusado admitió a dos testigos del fiscal, que él le había hecho el daño a María Elena y que ésta estaba encinta de él. En la voz popular, "hacerle el daño" es sinónimo de "deberle la honra" y significa desflorar a una doncella; pero de esa frase no puede concluirse que la desfloración se hizo por la fuerza y violencia o mediante amenazas, venciendo así la resistencia de la mujer desflorada. En su consecuencia, estamos frente a una prueba de corroboración del acto sexual únicamente y no del otro elemento esencial del delito de violación.

■ En muchas jurisdicciones americanas la regla es que en ausencia de un estatuto, procede la convicción por el delito de violación con el testimonio sin corroborar de la mujer agraviada. Aun en estas jurisdicciones la regla ha sido condicionada a que el testimonio de la mujer sea claro y convincente. Asimismo es costumbre en esas jurisdicciones prevenir al jurado de que debe ejercer en sumo grado su discreción para evitar que le den peso indebido al testimonio sin

(²) Véase *People* v. *Downs,* 140 N. E. 706.

corroborar de la perjudicada. Esta regla reconoce que es fácil denunciar la comisión del delito de violación y muy difícil defenderse de dicha denuncia.

En algunos estados, la regla es que aun en ausencia de un estatuto al efecto, no procede una convicción por el delito de violación a menos que concurran circunstancias que tiendan a corroborar el testimonio de la perjudicada.

En muchos estados sus estatutos exigen como en Puerto Rico, que el testimonio de la perjudicada sea corroborado. Sin embargo, aun en estas jurisdicciones la jurisprudencia discrepa en cuanto a los extremos que deben corroborarse. En Iowa, por ejemplo, se ha resuelto que la prueba de corroboración es suficiente si relaciona al acusado con el acto sexual. Otros estados, como Nueva York, Washington y Tejas, sostienen que no procede una convicción a menos que el testimonio de la perjudicada quede corroborado en los dos elementos esenciales de los delitos de violación o seducción. Véase la monografía en 60 A.L.R. 1124 y los casos de *State* v. *Gibson*, 116 Pac. 872; *Spenrath* v. *State*, 48 S.W. 192; *People* v. *Dunbar*, 130 N.Y.S.2d 59; *People* v. *Mahoney*, 113 N.Y.S.2d 693; *People* v. *Adler*, 73 N.Y.S.2d 841.

Claro está, no puede establecerse una medida para determinar la suficiencia de la prueba de corroboración y cada caso debe ser resuelto de acuerdo con sus peculiares circunstancias. De todos modos somos de opinión que la mejor regla es la que exige alguna prueba de corroboración en cuanto a los elementos integrantes del delito de violación. Es una protección para el acusado, especialmente cuando él ha admitido las relaciones sexuales, contra acusaciones espurias por delitos sexuales.

Por las razones expuestas resolvemos que en el presente caso no hay en el récord suficiente prueba de corroboración del testimonio de la perjudicada y en su consecuencia, *debe revocarse la sentencia apelada y absolverse al acusado.*

El Juez Asociado Sr. Saldaña está conforme con el resultado.