EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANGEL LUIS OQUENDO SANTANA, acusado y apelante.

*Número:* 16801. *Resuelto:* 21 de julio de 1961.

*Rafael A. Pesquera*, abogado del apelante; *Arturo Estrella, Procurador General Interino* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar*, abogados de El Pueblo, apelado.

Sala integrada por el Juez Asociado señor Blanco Lugo, como Presidente de Sala, y los Jueces Asociados señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

El acusado apelante Angel Luis Oquendo Santana, quien fue convicto del delito de violación (artículo 255 del Código Penal, 33 L.P.R.A. sec. 961),[1] apunta la comisión de dos errores; a saber, ausencia de corroboración del testimonio de la perjudicada e insuficiencia de la prueba. Para considerar este señalamiento es preciso hacer un resumen de la prueba presentada por el fiscal y admitida en el acto del juicio, única que desfiló en el proceso.

La perjudicada declaró que tenía dieciséis años; que se dirigía a casa de su abuela a buscar unos fósforos, e iba corriendo porque temía que su padre le pegara; que se cayó, y entonces un hermano del acusado la agarró y le tapó la boca, pero no la golpeó; que el acusado abusó de ella; que al aga-

---

[1] La acusación formulada lee como sigue:

"Allá en o por el día 13 de noviembre de 1957, y en el Barrio Candelaria de Toa Baja, P. R., . . . allí y entonces, el referido acusado Angel Luis Oquendo Santana, ilegal y voluntariamente, por medio de la fuerza y la violencia, contra la voluntad y sin el consentimiento de la joven . . . yació y tuvo contacto carnal (sexual intercourse) con . . . que no era allí y entonces la propia esposa del acusado."

rrarla, ella gritó; que para realizar el acto le rompió los pantaloncitos con que estaba vestida; que mientras el acusado realizaba el acto sexual ella "pataleaba" y gritaba, y que la soltaron cuando se acercó una vecina; que después del hecho, se dirigió a la casa de Alejo del Valle en donde trabajaba; que al siguiente día le narró lo sucedido a su mamá "cuando lo supo mi mamá por boca de mi hermano que se lo había dicho", a insistencias de ésta; que no le hizo el relato antes temiendo que su padre le pegara; y que el acusado no portaba ningún arma.

Las partes estipularon que el médico que examinó a la perjudicada a raíz de los hechos declararía que ella estaba desflorada, pero la desfloración no era de fecha reciente. Sin embargo, en 14 de noviembre de 1957, presentaba un trauma periuretral que indicaba "acto de violación reciente".

Un hermano de la víctima declaró que, en ocasión de estar con un grupo de personas, el acusado, que participaba en la reunión, había indicado que una muchacha que trabajaba en casa de Alejo del Valle era "blandita" y que había ido con ella a un sitio "[a] quererse con ella, a tener contacto carnal con ella"; que se lo informó a su mamá y fueron a buscarla esa misma noche al sitio del trabajo, pero que su hermano no decía nada a pesar de la insistencia de la madre en interrogarla.

La madre de la perjudicada declaró que su hijo le informó que el acusado había alardeado sobre relaciones que había tenido con la víctima; que en vista de esto le había hecho varias preguntas, y que no fue hasta el día siguiente que a insistencias de la testigo, la víctima le confesó lo que le había ocurrido con el acusado; que el pantalón que ella usaba el día de la alegada comisión del delito estaba muy sucio "porque la revolcaron en el piso y se lo rompieron".

Un policía que investigó los hechos indicó que el acusado le había admitido voluntariamente que había tenido relaciones con la perjudicada.

 1.—El empleo de fuerza o violencia para vencer la resistencia de la mujer ofendida es índice de su falta de con-

sentimiento. Por supuesto que no existe una medida inflexible para determinar el grado de resistencia que debe oponerse por la perjudicada, y todo depende de las circunstancias particulares de cada caso. No es necesario, sin embargo, que la mujer despliegue una resistencia tenaz, *People* v. *Newlan,* 343 P.2d 618 (Cal. 1959); *People* v. *Stewart,* 240 P.2d 704, 709 (Cal. 1952); y es suficiente que se demuestre que hubo resistencia indicativa de la falta de consentimiento y que esta resistencia fue vencida mediante aquel grado de fuerza o violencia que permitieron al acusado saciar su lasciva concupiscencia contra la voluntad de la mujer. Para determinar el grado de resistencia que es necesario que haya mediado para que se cometa el delito deben considerarse varios factores, y entre ellos, la fuerza relativa de las partes, su edad y la condición de la mujer, así como la inutilidad de oponer resistencia dentro de las circunstancias específicas de cada caso, *People* v. *Nazworth,* 313 P.2d 113 (Cal. 1957). Claro está, la mera negativa de la mujer no es suficiente, *Pueblo* v. *Baerga,* 70 D.P.R. 90 (1949). No hay la menor duda de que los hechos, según relatados por la perjudicada, señalan su falta de consentimiento para la realización del acto carnal y el logro por el acusado de sus deseos mediante el empleo de un grado de violencia suficiente para poder concluir que la víctima no accedió voluntariamente. La prueba demuestra que ésta cedió cuando fue agarrada por el hermano del acusado; que gritó y le taparon la boca, y que mientras se consumaba la penetración, ella "pataleaba" y gritaba. No se cometió este primer error.

2.—La regla del derecho común permitía la convicción por un delito de violación a base del testimonio nocorroborado de la perjudicada, siempre que éste no fuera contradictorio, increíble o intrínsecamente improbable. Sin embargo, en algunas jurisdicciones, como en Puerto Rico (artículo 250 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 729), se requiere estatutariamente la corroboración. Este requisito obedece al fin de proteger al acusado

de imputaciones infundadas y que puedan ser hijas de la reacción femenina ante el desamor o inconstancia del hombre. *Corroboration and Circumstantial Evidence in Rope Cases*, 30 J. Crim. L. 788 (1940); *Necessity and sufficiency of corroboration of prosecution in prosecution for rape*, 60 A.L.R. 1124 (1929).

En *Pueblo* v. *Colón*, 81 D.P.R. 814 (1960) discutimos extensamente la regla de corroboración en los casos de violación, y específicamente indicamos que cuando se trata de la modalidad que aquí se imputa al acusado, dicha prueba debe referirse no sólo a la realización del acto carnal, sino también al uso de fuerza o violencia para consumarlo.

El testimonio del médico que examinó a la perjudicada al efecto de que ésta presentaba rasgos de un trauma periuretral reciente, que indicaba un "acto de violación reciente", no constituye suficiente corroboración porque no conecta al acusado con la comisión del delito. *Pueblo* v. *Lugo*, 70 D.P.R. 145 (1949); *Pueblo* v. *Baerga*, 70 D.P.R. 90 (1949); *Pueblo* v. *Feliciano*, 53 D.P.R. 423 (1938). Tampoco son suficientes las declaraciones reseñadas del hermano y del policía pues meramente corroboran la realización del acto carnal. *Pueblo* v. *Colón*, 81 D.P.R. 814 (1960). Es necesario, por tanto, analizar la declaración de la madre de la perjudicada resumida anteriormente para determinar si efectivamente se presentó prueba suficiente de corroboración, o sea, si las manifestaciones que le hizo la hija, por ser parte del *res gestae*, establecen el otro elemento del delito, o sea el uso de fuerza o violencia para vencer la resistencia opuesta.

En *Pueblo* v. *Lugo*, 70 D.P.R. 145 (1949) el acusado tuvo relaciones con la ofendida en su automóvil, y luego la llevó a casa de una hermana. Esta última declaró que la perjudicada había llegado a su casa sola y llorando, y que al abrirle la puerta, le echó los brazos y se quejó; que trató de investigar lo que le sucedía, y solamente le dijo que tenía miedo, y que al preguntarle porqué había llegado a una hora tan tarde, le contestó que el acusado la había obligado a montarse en el

carro; y que al interrogarla sobre si Lugo le había hecho algo, le replicó llorando que tenía miedo. La madre declaró que interrogó a su hija en relación con su conducta y ésta le indicó que el acusado la había obligado a montarse en el automóvil para dar un corto paseo, pero ni esa misma noche ni la siguiente le hizo manifestación alguna sobre lo ocurrido, y fue al tercer día que le informó, sin más detalles, que había sido violada. El padre de la ofendida declaró que fue a buscar a su hija y la encontró llorando en casa de su otra hija; que le preguntó lo que le sucedía y ella le respondió que tenía miedo. Esa noche no le dijo nada. El domingo no estuvo en su casa y el lunes su esposa le informó sobre lo sucedido. Se confrontó con su hija y ella le manifestó que no había dicho nada antes porque le tenía miedo al acusado. Se sostuvo que las declaraciones de la perjudicada a la madre y a sus otros familiares no constituían suficiente corroboración, porque las manifestaciones no fueron espontáneas ni se hicieron en la más próxima oportunidad que tuvo la ofendida para hacerlas libre de coacción.

*Pueblo* v. *Márquez*, 64 D.P.R. 371 (1945) presentó una situación de hechos muy similar a la del presente caso. Se presentó como corroboración el testimonio de la madre de la perjudicada, que declaró que el día de autos, al observar que su hija caminaba con dificultad y tenía manchas de sangre en el vestido, la interrogó, pero ella le indicó que estaba cansada y las manchas eran de la menstruación; que ocho días después, el padre de la víctima le indicó que había oído a los acusados comentar que se habían burlado de ésta, y que al investigar sobre el particular su hija le contó entonces lo sucedido. Dijimos: ". . . [E]stas segundas manifestaciones de la perjudicada no son las manifestaciones espontáneas a que se refiere la doctrina . . . Es verdad que según ella declaró, los acusados la habían amenazado con matarla, pero no aparece de la prueba que ella continuara después de realizado el delito bajo la influencia dominadora de ellos. No revelan los autos que ella volviera a verlos en alguna ocasión, y por el

contrario se hallaba entre sus padres, de quienes nada tenía que temer."

En el presente caso las manifestaciones de la perjudicada sobre lo que le había ocurrido fueron hechas a insistencias de la madre, quien ya estaba advertida de lo que el acusado había dicho en un grupo de personas. Cuando la madre se enteró fue en busca de la hija al sitio donde ésta trabajaba, y a pesar de haberla interrogado, ella nada le dijo. Fue al siguiente día que por la insistencia maternal, la hija le contó lo sucedido. En ningún momento el silencio de la ofendida obedeció a amenaza o coacción del acusado. La única explicación que se ofreció para la actitud de la víctima de que no le había pasado nada, cuando se le interrogó por primera vez, fue que tenía temor a que su padre le pegara. Pero parece claramente que en la primera ocasión en que la madre la conminó a relatar lo sucedido, el padre no se encontraba presente. Bajo las circunstancias de este caso y a la luz de lo resuelto en los casos de *Lugo* y *Márquez*, no podemos sostener que esta prueba constituye suficiente corroboración por entender que falta el elemento de espontaneidad ya que las manifestaciones a la madre respondieron a la insistencia de ésta, ni el de contemporaneidad, por no haberse hecho las mismas en la primera oportunidad que tuvo la perjudicada de hacerlas.

Ahora bien, la dificultad con que nos encontramos es que esta prueba no fue oportunamente objetada por el acusado, y por tanto, no hay cuestión alguna sobre su admisibilidad. No fue hasta que desfiló la prueba de cargo que se menciona por primera vez para solicitarse la absolución por falta de prueba basándose en que la que se presentó para corroborar la declaración de la perjudicada era prueba de referencia, por no ser parte del *res gestae*. Ni siquiera se había solicitado su eliminación al concluir el testimonio de la testigo. El reparo a la admisibilidad no puede levantarse por primera vez en apelación en forma indirecta. *Pueblo* v. *Torres*, 81 D.P.R. 678, 683 (1960); *Pueblo* v. *Jiménez*, 78 D.P.R. 7, 11 (1955). Sin embargo, tratándose de que este

242

caso fue ventilado por tribunal de derecho, y que la admisión del testimonio de la madre era tan obviamente perjudicial al acusado por ser la única prueba de corroboración del elemento de violencia del delito imputado, el juez ha debido excluirlo no obstante la falta de oportuna objeción. Cf. *Pueblo* v. *Fournier*, 77 D.P.R. 222, 278 (1954). Cuando menos, bajo las circunstancias específicas de este caso, la solicitud de la defensa sobre absolución perentoria del acusado, ha debido considerarse a la luz de un reexamen de la cuestión de admisibilidad. (²)

*Se revocará la sentencia dictada por el Tribunal Superior, Sala de Bayamón, en 20 de febrero de 1959, y se absolverá libremente al acusado.*

(²) Al insistir el abogado del acusado en la insuficiencia de la prueba de corroboración, el tribunal ordenó "que venga la joven de nuevo a declarar". (T. E., pág. 29.) Pero claramente, esto no era lo procedente, ya que la perjudicada no podía corroborarse a sí misma.