EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* HIPÓLITO BÁEZ RAMOS, acusado y apelante.

*Número:* CR-64-388      *Resuelto:* 19 de febrero de 1965

*Carmen L. Santini,* abogada del apelante; *J. B. Fernández Badillo, Procurador General,* y *Elpidio Arcaya, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

PER CURIAM: El apelante fue acusado y convicto por un jurado del delito de violación consistente en que en 29 de octubre de 1963, en el barrio Piñones de Carolina, sostuvo relaciones sexuales con la señora I. D. O. de S., quien no era su esposa o mujer, sin el consentimiento de ésta, en contra de su voluntad y valiéndose para ello de la fuerza y la violencia.

Contra la sentencia condenándole a sufrir de 4 a 10 años de presidio interpuso este recurso, señalando la comisión de los siguientes errores: 1) al entender probado que la resistencia en este caso fue real y efectiva; 2) no hubo corroboración de la declaración de la perjudicada, y 3) el tribunal se negó erróneamente a trasmitir al jurado las dos instrucciones adicionales solicitadas y especialmente la instrucción de que tenía que corroborarse el acto carnal.

■ No hay duda de que se comete violación yaciendo con una mujer que no fuese la propia, entre otros casos, cuando la mujer opusiere resistencia pero ésta fuere vencida por fuerza o violencia. Art. 255 del Código Penal, 33 L.P.R.A. sec. 961. De suerte que de acuerdo con esta modalidad del delito de violación, la resistencia por parte de la mujer es un elemento esencial de dicho delito y la resistencia debe ser real y de tal grado que sólo sea vencida por fuerza o violencia, a menos que la mujer estuviera impedida de oponerla a causa de amenazas de grave e inmediato daño corporal, acompañadas de la aparente actitud para realizarlos. *Pueblo* v. *Rodríguez*, 66 D.P.R. 934 (1947); *Pueblo* v. *Pimentel*, 68 D.P.R. 633 (1948).

La prueba de cargo, indudablemente creída por el jurado demostró que entre siete y siete y media de la noche del 29 de octubre de 1963, la perjudicada en unión a una hija suya de nueve años de edad, abordó frente a su residencia, en el Caserío Villa Prades, un taxímetro conducido por el apelante, con el propósito de ir a visitar a su esposo, quien se encontraba enfermo recluido en la Clínica "Guadalupe" de Hato Rey. El chófer pretextando que tenía que ir a buscar una cosa por allí cerca y contra la protesta de la perjudicada, se dirigió a la Carretera Sesenta y Cinco de Infantería y de allí se internó por un monte obscuro hasta llegar al paraje solitario de Piñones, donde ocurrió la comisión del delito. Veamos como la perjudicada explica lo sucedido:

"P. Y qué hizo él entonces?

R. Apagó el carro.

P. Cuando él apagó el carro, las luces las dejó prendidas o apagadas?

R. Las apagó.

P. Y qué hizo si hizo algo?

R. Se apeó por la puerta del lado del guía de él y dio la vuelta por la parte delante del carro y abrió la puerta de delante del otro lado y fue y abrió la otra de atrás donde estaba yo, me sacó a empujones, a la brava y de todos modos me pasó de la parte de

atrás a la parte de delante y yo peleando con él para que no abusara de mí y cuando él de todos modos quería abusar de mí me tiró en el asiento empujándome dándome yo con el guía.

P. Usted se dio con el guía?

R. Sí, señor.

P. Dónde?

R. En la cabeza. Entonces yo empecé a pelear con él a decirle que no fuera tan abusador, que no hiciera eso, que por su madre que no lo hiciera, por su esposa, que me llevara a la clínica.

P. La decía que por la mamá de él o que por lo que fuera que la dejara y que la llevara a la clínica. ¿Y qué le decía él?

R. El me decía: 'cállese, cállese', yo no me atrevo decir.

P. Pero dígalo.

R. 'Cállese maricona y puta', 'acaba ya' y yo empujándolo hasta que me esgarró todo el traje y se tiró encima de mí poniéndome las rodillas de él así hasta que yo me cansé las manos, a mí se me agotaron las fuerzas.

P. Y qué pasó?

R. Abusó de mí." (T.E. págs. 9 a 10.)

■ En *Pueblo* v. *Oquendo*, 83 D.P.R. 234 (1961), dijimos que el empleo de fuerza o violencia para vencer la resistencia de la mujer ofendida es índice de su falta de consentimiento y agregamos a la página 238: "Por supuesto que no existe una medida inflexible para determinar el grado de resistencia que debe oponerse por la perjudicada, y todo depende de las circunstancias particulares de cada caso. No es necesario, sin embargo, que la mujer despliegue una resistencia tenaz, *People* v. *Newlan*, 343 P.2d 618 (Cal. 1959); *People* v. *Stewart*, 240 P.2d 704, 709 (Cal. 1952); y es suficiente que se demuestre que hubo resistencia indicativa de la falta de consentimiento y que esta resistencia fue vencida mediante aquel grado de fuerza o violencia que permitieron al acusado saciar su lasciva concupiscencia contra la voluntad de la mujer. Para determinar el grado de resistencia que es necesario que haya mediado para que se cometa el delito deben considerarse varios factores, y entre ellos, la fuerza relativa de las partes, su edad y la condición de la mujer, así como la

inutilidad de oponer resistencia dentro de las circunstancias específicas de cada caso, *People* v. *Nazworth,* 313 P.2d 113 (Cal. 1957). Claro está, la mera negativa de la mujer no es suficiente, *Pueblo* v. *Baerga,* 70 D.P.R. 90 (1949)." (Pág. 238.)

■ Es evidente que la mujer ofendida opuso en este caso una resistencia real indicativa de falta de consentimiento y que tal resistencia fue vencida por el grado de fuerza y violencia que contra ella desplegó el acusado para ultrajarla.

El primer error no fue cometido, ni tampoco el segundo. A nuestro juicio, el testimonio de la perjudicada quedó corroborado de acuerdo con las exigencias de nuestra ley y jurisprudencia, por el testimonio de su hija, la niña de nueve años. Ella declaró sobre todo lo que le ocurrió a su madre desde que abordaron el taxímetro hasta que regresara a su hogar. Describió como el acusado después de llegar a Piñones y detener el vehículo, sacó a su madre a empellones del asiento trasero y la tiró en el asiento delantero diciéndole palabras feas que la niña no quiso repetir pero que ya conocemos por el testimonio de la madre. Vio la lucha que sostuvo su madre con el acusado en el asiento delantero, describiéndola así: "Cuando él la tiró así empezó a pelear con mi mamá."

■ Esta prueba es suficiente para corroborar los elementos esenciales del delito de violación. Establece fuera de duda una relación entre el acusado y el delito. *Pueblo* v. *Rodríguez Hernández,* 91 D.P.R. 183 (1964); *Pueblo* v. *Portalatín,* 72 D.P.R. 152 (1951); *Pueblo* v. *Baerga,* 70 D.P.R. 90 (1949); *Pueblo* v. *de Jesús,* 18 D.P.R. 591 (1912).

■ Tampoco cometió error el tribunal sentenciador al denegar las instrucciones solicitadas por la defensa. Las trasmitidas al jurado cubren tanto el carácter de la resistencia que debe oponer la mujer ofendida como la necesidad de que se corrobore su testimonio.

*La sentencia apelada será confirmada.*