EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* EDUARDO PANTOJA AGUAYO, acusado y apelante.

*Número:* CR-68-15      *Resuelto:* 30 de abril de 1969

*Mario A. Rodríguez,* abogado del apelante; *Rafael A. Rivera Cruz, Procurador General, Peter Ortiz, Subprocurador General Interino,* y *Lolita Miranda, Procuradora General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Por haberle ocasionada la muerte a su esposa Matilde Figueroa Sala, el apelante Eduardo Pantoja Aguayo fue convicto de asesinato en segundo grado. Los hechos son sencillos. Una noche Matilde regresó al hogar conyugal, una humilde casita en un barrio de Cataño, alrededor de las nueve de la noche, acompañada de la testigo Celenia Matta de Ortiz. Matilde penetró a la única habitación; su esposo, quien se había dado unos tragos, estaba parado en la puerta que de la sala conducía a la habitación. Gráficamente dice Celenia: "Allí, sin aquel ninguno, él le dio dos burrunazos", uno por el lado izquierdo del costado, el otro por el abdomen. Al recibir el primer puñetazo la víctima se retiró unos pasos. El acusado la siguió y le propinó el segundo golpe. No medió discusión alguna, sólo hablaron en voz baja segundos antes de la agresión. La agredida se quejó. El acusado se retiró a dormir.

Los golpes le produjeron a la víctima—persona endeble, en "un pobre estado de nutrición", dijo el patólogo que practicó la autopsia—la rotura del bazo y del riñón izquierdo. Fue intervenida quirúrgicamente, pero desarrolló una peritonitis aguda, que le produjo la muerte.

(1) Al terminar el juez de instancia de transmitir las instrucciones al jurado, el fiscal solicitó "instrucciones posibles sobre el delito de homicidio involuntario", a lo cual se negó el magistrado por creerlas improcedentes. La defensa se unió al pedido del ministerio público fundándose en que la prueba era susceptible de ser interpretada como una muerte causada al realizarse un acto ilegal que no constituye delito grave. Ripostó el juez: "Que conlleva malicia. Si cometió acometimiento y agresión tiene que haber una deducción de malicia y en ese caso no hay homicidio involuntario porque el homicidio es dar muerte ilegal sin que medie malicia y yo considero aquí que de no haber muerto esta persona, esto hubiera sido solamente acometimiento y agresión. No hay lugar para concluir un homicidio involuntario porque ha me-

diado malicia." Se señala como error la negativa a transmitir las instrucciones solicitadas.

En *Pueblo* v. *Figueroa*, 80 D.P.R. 328 (1958), hicimos referencia a que en el homicidio involuntario la muerte se ocasiona sin intención de matar, y sostuvimos, considerados los hechos específicos envueltos, que el hecho de golpear con el puño en el pecho, una sola vez, a una persona adulta, saludable, y en circunstancias ordinarias no puede considerarse peligroso, o susceptible de producir la muerte no pudiendo, por ende, inferirse intención homicida alguna. Añadimos, a la pág. 335:

"La inferencia de una intención homicida está justificada cuando una agresión con los puños se descarga en forma brutal, violenta y viciosa sobre una parte vital y delicada del cuerpo humano; cuando el agresor se aprovecha de la indefensión del agredido, toma ventaja de su corpulencia sobre la víctima y la castiga con extrema crueldad en un temerario desprecio por la seguridad humana, o en tal forma que el resultado natural, ordinario y probable es la muerte del semejante agredido. En estos casos, las manos y los pies se equiparan a un arma mortífera."

Al referirnos al elemento de malicia premeditada, dijimos en *Pueblo* v. *Túa*, 84 D.P.R. 39, 54 (1961) que:

"La malicia premeditada es un elemento *de hecho* a ser hallado por el jurado, pero siendo un ingrediente mental o subjetivo, allí donde no se ha manifestado la intención deliberada de quitar ilegalmente la vida le es permisible al jurado inferirla o deducirla como un hecho de los demás actos y circunstancias que rodean la perpetración de la muerte o relacionados con ésta, una vez instruido en ley que la malicia denota un acto dañoso e intencional, *sin justa causa o excusa*, en perjuicio de otro."

Convenimos con el juez a quo que la prueba no justificaba instrucciones sobre el delito de homicidio involuntario. Esenciales son a este respecto ciertos hechos *incontroverti-*

*dos:*(¹) (a) la naturaleza brutal de la agresión según se deduce de sus consecuencias inmediatas, la ruptura de dos órganos vitales como el bazo y un riñón, (b) la diferencia en la contextura física entre el agresor y la víctima, a quien se describió como endeble y desnutrida, (c) la indefensión de la agredida y el evidente desprecio que se revela a la seguridad de un semejante. Todos estos elementos en conjunto señalan la comisión de un acto dañoso, intencional, sin justa causa ni excusa. No están presentes las circunstancias de *Figueroa,* supra, en que el acto de agresión—propinar un puñetazo a un varón adulto y saludable, que le derribó y en la caída al suelo le causó la fractura del cráneo—era compatible con la falta de malicia y de intención homicida.

■ No se trata como sugiere el apelante, de la usurpación por el juez de la facultad del jurado para determinar la existencia o no de malicia; todo se reduce a que la prueba no justificaba las instrucciones de homicidio involuntario porque el cuadro de los hechos presentado—la agresión brutal a una indefensa mujer—sólo es compatible con el delito de asesinato. *Pueblo* v. *Tufiño Cruz,* 96 D.P.R. 225 (1968).

■ (2) Se queja el apelante de que el juez de instancia no transmitió instrucciones al jurado sobre el propósito y la calidad del testimonio pericial. Específicamente alude a la importancia de ello en este caso presentándolo como uno en que hubo conflicto entre el patólogo que practicó la autopsia y el médico presentado por la defensa. Este planteamiento pierde toda trascendencia cuando observamos que este último —que no tuvo la oportunidad de examinar a la víctima bien en vida o su cadáver—admitió que una peritonitis puede sobrevenir como consecuencia de un puñetazo "si hay rotura de algún órgano interno". Además el tribunal indicó claramente al jurado que la opinión de un perito, si le merece

---

(¹) La versión de la defensa fue que los golpes que recibió la occisa fueron el resultado de una caída en el hogar, sin que interviniera acto criminal alguno del acusado.

crédito al jurado, puede servir de base para considerar establecido un hecho. *Pueblo v. Sánchez*, 79 D.P.R. 116 (1956), no tiene el alcance que se le atribuye; se limita a exponer que cuando la credibilidad de un perito ataca la credibilidad de otro perito, al jurado corresponde determinar a cuál de los testimonios dará crédito. Esta no es más que una aplicación de la regla general sobre apreciación de prueba testifical.

■ (3) Apúntase que el veredicto es contrario a derecho por no haberse establecido el *corpus delicti*. Fundóse en que el testimonio del patólogo no demostró claramente el hecho de la muerte y cuál fue la causa de la peritonitis que eventualmente culminó en el deceso de la víctima.

Es cierto que el médico forense afirmó que la muerte pudo haber sido consecuencia de varias causas: un puño, una caída o un golpe contundente con algún objeto de metal. Pero esta afirmación no puede desvincularse del resto de la prueba que ya resumimos al comienzo de esta opinión. El jurado estaba plenamente justificado en deducir que los puñetazos propinados por el apelante a su esposa fueron la causa directa de la muerte.

■ (4) Adúcese finalmente que no se instruyó debidamente al jurado sobre los únicos fines para los cuales se admitió una declaración jurada prestada ante el fiscal por una hija menor de la víctima. No le asiste la razón. Expresamente se les indicó que la declaración se había presentado "a los fines de impugnar la veracidad de esta muchachita. Que únicamente para ese fin es que puede ser considerado por ustedes para determinación si lo que ella dijo aquí es cierto" y se extendió en otras consideraciones análogas. Véase, *Pueblo v. Vega Román*, 92 D.P.R. 677, 683 (1965).

*No habiéndose cometido los errores imputados, se confirmará la sentencia dictada por el Tribunal Superior, Sala de Bayamón en 31 de agosto de 1965.*

El Juez Asociado Señor Santana Becerra no intervino.