EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
JOSÉ FIGUEROA FIGUEROA, acusado y apelante.

*Número:* CR-70-114 *Resuelto:* 9 de noviembre de 1971

*Enrique Miranda Merced,* abogado del apelante; *Gilberto Gierbolini, Procurador General,* y *Jorge Ríos Torres, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR MARTÍNEZ MUÑOZ emitió la opinión del Tribunal.

El apelante fue acusado de violar a una mujer que no era su esposa o mujer propia sin su consentimiento, en contra de su voluntad y valiéndose para ello de la fuerza, la violencia y la intimidación. Esa es la acusación. Un jurado lo declaró convicto de dicho delito por votación de once (11) a uno (1) y fue sentenciado a cumplir de 1 a 5 años de presidio.

Señala tres errores como cometidos por el tribunal sentenciador. El primero se refiere a la prueba de corroboración presentada, la que a su juicio fue insuficiente por ser de referencia y no formar parte del *res gestae,* ya que las manifestaciones de la perjudicada a la testigo no fueron vertidas con el ". . . grado de espontaneidad y sinceridad . . . ." requerido.

No se cometió el primer error señalado. Los hechos ocurrieron alrededor de las 3:00 de la madrugada en la casa de la perjudicada, quien vivía sola con una hija pequeña en la Barriada San José de Hato Rey. A esa hora la perjudicada se encontraba durmiendo. Sintió que tocaban en la puerta. Lo que sigue es un correcto resumen del récord de los testimonios de la perjudicada y la testigo de corroboración que hemos adoptado del informe del Procurador General:

"Se dirigió hacia la puerta creyendo que era su esposo, del cual estaba separada por espacio de 2 años y al abrir se topó con el acusado-apelante. (T.E. pág. 24) Este al verla la empujó llevándola a la fuerza hasta el cuarto y allí la lanzó sobre la cama. Con el impacto la cama se viró y cayó al suelo. El apelante entonces la llevó hasta la sala. (T.E. págs. 25 y 34) La perjudicada

trató de gritar y el apelante le tapó la boca con la mano infiriéndole luego varios golpes en distintas partes del cuerpo. (T.E. pág. 26) Luego la amenazó con un destornillador con el cual la hirió en el pecho. En esas circunstancias la ultrajó. (T.E. pág. 32) Durante la comisión del delito el apelante permaneció en la casa de la perjudicada por espacio de media hora aproximadamente, tras lo cual huyó.

La perjudicada permaneció en su casa por espacio de dos horas aproximadamente, tiempo durante el cual manifestó estar 'atontada y mariada [*sic*]' a causa de los golpes recibidos y como a eso de las 6:00 A.M. salió a avisar a su vecina Epifania García. (T.E. pág. 65) Cuando su vecina la vio envuelta en una toalla le preguntó qué le pasaba y la perjudicada le contó lo sucedido. Identificó a su agresor como 'Banda Blanda', apodo por el cual se conoce el acusado-apelante. (T.E. pág. 70)

Luego pasó un vehículo de patrulla de la Policía y la perjudicada le detuvo y le contó a los policías lo que le había sucedido. (T.E. pág. 38)

La testigo Epifania García declaró que es vecina de la perjudicada. (T.E. pág. 57) Que el día 6 de diciembre de 1968 como a las 6:00 A.M. abrió la puerta de su casa y vio a la perjudicada parada en la puerta de su hogar (T.E. pág. 60) quien mostraba varios golpes en su cuerpo y casi no podía hablar. (T.E. pág. 61) Esta le manifestó que el acusado había 'abusado de ella a la brava'. (T.E. pág. 71–74) Que la perjudicada le dijo que había sido 'Banda Blanca' a quien la testigo señaló como el acusado-apelante."

■ El elemento de contemporaneidad y espontaneidad estuvo presente en el testimonio sobre corroboración. El tiempo transcurrido entre la ocurrencia de los hechos y las manifestaciones que se consideran parte de *res gestae*, no es el factor decisivo para determinar la aplicación de la doctrina. *Pueblo v. De Jesús Cruz*, 94 D.P.R. 180, 187 (1967).

La perjudicada relató lo sucedido a su vecina dos horas y media después de los hechos, cuando aún se encontraba en un estado de ánimo "que casi no podía hablar" (T.E. pág. 61), y luego a los policías que fueron a investigar la querella recibida (T.E. págs. 77–78). No se ha demostrado que mediara

aquí una "abierta desatención o clara desviación del principio envuelto" que justifique nuestra intervención. *Pueblo* v. *Calventy*, 34 D.P.R. 390, 393 (1925).

En el segundo señalamiento de error el apelante ataca la siguiente instrucción del tribunal sentenciador al jurado (T.E. pág. 113) :

"La declaración de Epifania García Cartagena, de ser creída por ustedes más allá de duda razonable, sería suficiente prueba de corroboración en este caso.

Las declaraciones de personas a quienes la ofendida se quejó del agravio inferídole prontamente después de la comisión del delito son suficientes para corroborar su declaración."

El apelante arguye que le corresponde al jurado, y no al juez, hacer la determinación sobre la *suficiencia* de la prueba de corroboración; que la instrucción equivalía a relevar al jurado de tener que hacer dicha determinación; y que, al relevar al jurado de cumplir con esa función y realizarla el juez en vez del jurado, erró el tribunal sentenciador.

El apelante le da énfasis sólo a la parte antes citada de la instrucción. Pero examinada ésta en su totalidad, la instrucción no tiene el efecto que el apelante le encuentra. La instrucción del juez sobre el requisito de corroboración comienza por decir que no podrá declararse convicto al acusado por la sola declaración de la mujer agraviada; que es necesario que la declaración de la agraviada sea corroborada con alguna otra que por sí misma, y sin tomar en consideración la declaración de la mujer agraviada, tienda a establecer la relación del acusado con la comisión del delito (T.E. pág. 113). El juez continúa sus instrucciones diciéndole al jurado que la corroboración no será suficiente si sólo probare la perpetración del delito o las circunstancias del mismo. Les dice, además, que esa prueba debe ser sobre dos extremos esenciales: (1) que la penetración o acto sexual fuere perpetrado por la fuerza y la violencia, a la mala y a la fuerza; y (2) tratar

de establecer y conectar al acusado con la comisión de los hechos.

■ Los dos elementos esenciales del delito—acto carnal y uso de amenazas, fuerza o violencia—fueron objeto de la instrucción. Eso es lo que se exige. *Pueblo* v. *Colón*, 81 D.P.R. 821 (1960). Si existe o no evidencia de corroboración para relacionar al acusado con los elementos esenciales del delito de violación, es una cuestión de derecho que le incumbe al juez. 3 Wharton's *Criminal Evidence*, sec. 958, pág. 410:

"En términos generales, la suficiencia de la prueba de corroboración es una cuestión para el jurado, pero si existe o no prueba de corroboración tendente a relacionar al acusado con el delito es una cuestión para la corte."

■ El juez no le indicó al jurado que la prueba de corroboración *es* suficiente, sino que *sería* suficiente prueba de corroboración *"de ser creída por ustedes más allá de duda razonable."* Los elementos esenciales del delito imputado están presentes en la prueba de corroboración. De ser creída por el jurado, como evidentemente lo fue, es suficiente para sostener la convicción del apelante por el delito de violación. No se cometió el segundo error.

En su tercer y último señalamiento, el apelante sostiene que el tribunal cometió error al denegarle una solicitud en el sentido de que se impartiesen instrucciones al jurado sobre un posible veredicto de acometimiento y agresión grave. La instrucción solicitada por la defensa y denegada por el juez dice así:

"Si ustedes creen que el acusado no sostuvo relaciones sexuales con la supuesta perjudicada en contra de la voluntad de ésta pero que en dicha ocasión la agredió es su deber traer un veredicto de absolución en el caso de violación pero de culpabilidad del delito de acometimiento y agresión."

El apelante, según la acusación, sostuvo relaciones sexuales con una mujer sin su consentimiento, en contra de su voluntad y valiéndose para ello de la fuerza, la violencia y la in-

timidación. Art. 255 del Código Penal, 33 L.P.R.A. sec. 961. El acometimiento y agresión es el acto ilegal de inferir algún daño violento en la persona de algún semejante con la intención de causarle daño, cualquiera que sean los medios o el grado de violencia que se emplearen, 33 L.P.R.A. sec. 821. Es grave, entre otras situaciones, cuando se cometiere entrando en la morada de una familia particular, o cuando se cometiere por un varón adulto en la persona de una mujer, 33 L.P.R.A. sec. 826(3) y (5). Una violación necesariamente envuelve una agresión contra la mujer. El acometimiento y agresión grave, bajo la modalidad del inciso (5), contiene todos los elementos de una violación excepto el acto carnal, y se castiga con multa que no bajará de $50.00 ni excederá de $1,000.00, ó de prisión en cárcel que no bajará de un mes ni excederá de dos años, o ambas penas, multa y prisión, 33 L.P.R.A. sec. 828.

 La violación se castiga con pena de presidio por el término mínimo de un año, Art. 258 Código Penal; 33 L.P.R.A. sec. 964. El acometimiento y agresión es, pues, un delito de menor gravedad que se encuentra abarcado dentro del delito de violación que se le imputó al apelante. Bajo ciertas circunstancias que, como veremos, no están presentes en este caso, un veredicto de acometimiento y agresión grave puede producirse dentro de un proceso por el delito de violación.

La Regla 147 de Procedimiento Criminal dispone:

"El acusado podrá ser declarado culpable de la comisión de cualquier delito inferior *necesariamente* comprendido en el delito que se le imputa; o de cualquier grado inferior del delito que se le imputa; o de tentativa de cometer el delito que se le imputa o cualquier otro delito necesariamente comprendido en él, o de cualquier grado que el mismo tenga, si tal tentativa constituye, por sí misma, un delito." (Bastardillas nuestras.)

El apelante no presentó prueba de defensa. Pero sostiene que aun así tenía derecho a la instrucción sobre un posible veredicto de acometimiento y agresión grave. Se basa, en re-

sumen, en que su alegación de inocencia puso en controversia todos y cada uno de los elementos del delito de violación imputado y que corresponde al Ministerio Público establecer afirmativamente todos esos elementos fuera de duda razonable y al jurado pasar juicio sobre cada uno de los elementos evidenciarios, adoptando unos, no creyendo otros, independientemente de que fueran vertidos por un solo testigo o por más de uno. En otras palabras, que el jurado podía darle crédito a un testigo y no a otro, y aún rechazar parte de su declaración adoptando el resto de su testimonio en cuanto a uno de los elementos del delito; creer que hubo una agresión y tener duda sobre si medió el acto carnal o, aun creyéndolo, determinar que la resistencia ofrecida por la víctima y que ésta fue vencida por la fuerza, elementos éstos esenciales del delito, no fueron establecidos fuera de duda razonable.

■ La necesidad de instrucciones al jurado referente a la posibilidad de veredictos por delitos inferiores necesariamente comprendidos en el delito mayor imputado surge cuando la *prueba lo justifica.* Esa es la norma que prevalece aquí. Se expresa en *Pueblo* v. *Burgos,* 76 D.P.R. 199, 202 (1954):

"Las instrucciones, además de cubrir todos los elementos del delito envuelto, deben también cubrir, *si la prueba lo justifica,* los elementos de delitos inferiores al delito imputado o comprendidos dentro de éste.

. . . . . . . . .

Cualquier defensa ofrecida por el acusado y sostenida por alguna prueba pertinente que levante una cuestión de hechos que le sea favorable debe ser objeto de una instrucción que exponga ampliamente la ley aplicable a dicha cuestión."

En esta jurisdicción no ha mediado desviación alguna de dicha norma. Véanse *Pueblo* v. *Jiménez,* 78 D.P.R. 7 (1955); *Pueblo* v. *Arce Valentín,* 88 D.P.R. 859 (1963); *Pueblo* v. *Del Valle,* 91 D.P.R. 174 (1964); *Pueblo* v. *Tufiño Cruz,* 96 D.P.R. 225 (1968); *Pueblo* v. *Pantoja Aguayo,* 97 D.P.R. 236 (1969); *Pueblo* v. *Domenech Meléndez,* 98 D.P.R. 64 (1969).

Interpretando la Regla 31 (c) de Procedimiento Criminal Federal, (1) equivalente a la Regla 147 nuestra, el Tribunal Supremo Nacional en *Sansone* v. *United States*, 380 U.S. 343, 349–350 (1964) sigue la misma norma al sostener que:

"Una instrucción sobre un delito menor incluido solamente procede si el delito mayor imputado requiere que el jurado determine sobre un elemento de hecho controvertido que no es necesario para la convicción de un delito menor incluido." (2)

█ La Corte de Apelaciones Para el Primer Circuito Federal sostuvo que no constituyó error del tribunal sentenciador su negativa a transmitir una instrucción solicitada por la defensa sobre un delito menor comprendido en el delito mayor imputado cuando la evidencia, en cuanto a cuatro de los cinco co-acusados, no había sido controvertida por éstos. Se expresó así la Corte de Apelaciones en *Driscoll* v. *United States*, 356 F.2d 324 (1966), a la pág. 327:

"Entendemos a *Sansone* en el sentido de que cuando el gobierno ha instado un caso claro, no controvertido por la evidencia,

---

(1) La Regla 31 (c) lee así:

"(c) Conviction of Less Offense. The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense."

(2) Añade la opinión del Tribunal, por voz del ex Juez Asociado Sr. Goldberg, que ". . . sostener lo contrario constituiría una invitación al jurado a escoger entre un delito grave (*felony*) y uno menos grave (*misdemeanor*), autorizándole fijar la pena, facultad ésta que tradicionalmente el Congreso le ha reservado al Juez." *Sansone* v. *United States* (supra, pag. 350, escolio 6). Ver *People* v. *Mussenden*, 308 N.Y. 558, 127 N.E.2d 551 (1955), en cuya opinión se reconoció que una norma contraria haría posible el indeseado resultado de veredictos injustificados o veredictos por transacción. En un estudio del tema, bajo el título *Submission of Lesser Crimes* que aparece en 56 Colum. L. Rev. 888–902 (1956) se dice a la pág. 898: "Esa es una crítica válida, aun desde el punto de vista del acusado—el someter delitos menores puede perjudicarlo al permitirle al jurado castigar por vagas insinuaciones de maldad, aunque ellos no lo hayan encontrado culpable de ningún delito. También se ha dicho que el instruir al jurado sobre delitos incluidos cuando la evidencia indica culpabilidad del delito mayor, probablemente los confundiría."

sobre un elemento requerido para el delito imputado, pero no así para el delito menor incluido, *el acusado tiene el deber de ofrecer alguna evidencia* sobre esa cuestión si él desea obtener el beneficio de que se le impute el delito menor incluido. En otras palabras, mientras que un juez no puede impedir que un jurado rechace el caso del ministerio público en su totalidad, él no está obligado, bajo estas circunstancias, a ayudar al jurado o llegar a una conclusión irracional de aceptación parcial y rechazo parcial del caso del ministerio público dando instrucciones sobre el delito menor incluido. Dos prerequisitos parecen ser vitales: que no exista controversia de hechos y que una conclusión contraria a la única evidencia sobre el particular fuese irracional." (Bastardillas nuestras.)

En el de autos la evidencia no fue controvertida y ésta estableció plenamente todos los elementos del delito de violación imputado. La prueba no justificaba la instrucción sobre el delito menor.

*Se confirmará la sentencia apelada.*

El Juez Presidente, Señor Negrón Fernández, no intervino.