EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* NICOMEDES FELICIANO, acusado y apelante.

Núm. 6962.—*Sometido:* Junio 16, 1938. *Resuelto:* Julio 6, 1938.

*Pedro M. Porrata,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

El Fiscal de la Corte de Distrito de Ponce formuló acusación contra Nicomedes Feliciano por un supuesto delito de violación cometido al yacer maliciosa y criminalmente con la niña menor de catorce años Ángela Nieves Almodóvar, que no era su esposa, allá para el día 20 de octubre de 1935, en el municipio de Yauco. Celebrado el juicio ante un jurado, fué declarado culpable. Solicitó un nuevo juicio, que

le fué denegado, dictándose después la sentencia que lo condenó a cumplir un año de presidio con trabajos forzados. Contra esta sentencia se interpuso el presente recurso.

Tres son los errores que el apelante imputa a la corte inferior al solicitar la revocación de la sentencia, a saber:

"*Primero.*—La Corte de Distrito cometió error al no ordenar la absolución perentoria del acusado por falta de prueba fehaciente constitutiva del delito de violación.

"*Segundo.*—La Corte de Distrito cometió error al instruir al jurado sobre el extremo relacionado con la necesidad de que la declaración de la perjudicada en un delito de violación tiene que estar corroborada por otra prueba.

"*Tercero.*—La Corte de Distrito cometió error al no concederle un nuevo juicio al acusado."

De la evidencia resulta que el acusado Nicomedes Feliciano hacía más de 17 años que vivía en concubinato con Dolores Nieves, tía de Ángela, la perjudicada; que allá para el 20 de octubre de 1935 Dolores salió para el cine como a las 3:30 de la tarde, dejando al acusado durmiendo en su casa con las puertas abiertas. Abandonó el propósito de ir al cine y volviendo a su casa, la encontró con las puertas cerradas. Se asomó entonces por una rendija y vió a una joven sentada en la cama donde había dejado a su amante, de espaldas para el sitio desde donde ella observaba. No conoció a la joven de momento y llamó entonces a su vecina Rosa Julia Padilla para que la identificara, resultando ser su sobrina Ángela Nieves la persona que se hallaba sentada en la cama. Se retiró Rosa Julia para su casa y Dolores hizo que le abrieran la puerta y penetró en la casa. Al enfrentarse con Ángela y Nicomedes que vinieron a abrirle la puerta, dirigiéndose a la primera le preguntó por qué estaba allí en ausencia de ella, contestando aquélla: "Yo estoy aquí porque yo he venido otras veces aquí a su casa." Al mismo tiempo Nicomedes, dirigiéndose a Dolores, le ordenó que se callara la boca. Declaró además Dolores que Angela vivía

a alguna distancia de su casa, como cuatro casas de separación, y que éstas quedan muy cerca unas de otras.

Declaró Rosa Julia Padilla que por indicación de Dolores observó por una rendija que había una joven sentada en la cama de Dolores y que la joven en cuestión resultó ser Ángela Nieves; que no pudo ver al acusado, retirándose inmediatamente Rosa Julia a su casa.

Ocupó la silla testifical Juan Nieves, padre de la perjudicada, declarando que su hija nació en Yauco; que nunca había sido casada; que no tiene más de doce años de edad; que la madre de ella se llama Juana Almodóvar y que las abuelas paterna y materna se llaman Cruz Nieves y Juana Almodóvar, respectivamente.

Se presentó en evidencia una certificación expedida por el Registrador Demográfico y Encargado del Registro Civil de Yauco, de la que resulta que Ángela es hija legítima de Juan Nieves y de Juana Almodóvar y que dicha niña nació en Yauco el 2 de octubre de 1923, teniendo por consiguiente doce años de edad en la fecha en que se realizaron los actos que se imputan al acusado.

Declaró la perjudicada que el 20 de octubre de 1935 estuvo en la casa del acusado, y a preguntas del fiscal, contestó:

"Pues él estaba en casa y me dijo que fuera a su casa y yo fuí y cuando yo fuí me cogió y me acostó en la cama y me quitó los *bloomers* y se me trepó encima y me metió la parte 'que tienen de orinar los hombres en la parte mía y después me cogió en la falda."

Continuó declarando que fué a la casa del acusado porque éste la obligó, amenazándola con darle a su papá cierto papel que él tenía y que según parece la perjudicaba a ella. Declaró además que en varias ocasiones anteriores había realizado los mismos actos con el acusado y con otro hombre.

El Doctor Julio Roca declaró que ejerce su profesión en Yauco; que examinó a la niña Ángela Nieves a solicitud del juez municipal; que sus órganos genitales exteriormente no

habían adquirido su madurez completa; que no tenían el desarrollo propio de una mujer y que observó que el himen había desaparecido; que la vagina era bastante amplia y las paredes no se tocaban, lo que demostraba que había tenido contacto sexual varias veces.

Tal fué la prueba del fiscal en este caso.

La prueba del acusado consistió en la declaración de Dolores Nieves y en la suya propia. Declaró Dolores Nieves a preguntas del acusado que es hermana de Juan Nieves, padre de la perjudicada y que es cierto que después de haber declarado ante el Juez Municipal de Yauco con respecto a los hechos de este caso, Juan Nieves, en estado de embriaguez, la amenazó porque le habían dicho que iba a declarar en contra de su hija, requiriéndola a la vez para que declarase a favor de ella; que la testigo fué entonces donde el Juez Municipal de Yauco, comunicándole lo acaecido, y que este funcionario le aconsejó que no se preocupase y que debía declarar como anteriormente lo había hecho ante él. Aseguró la testigo a repreguntas del fiscal que su declaración en la corte de distrito era la verdad y nada más que la verdad y exactamente igual a la que había prestado ante el juez municipal.

Declaró el acusado, luego de advertido por la corte del derecho que tenía de abstenerse de hacerlo, que su mujer, Dolores, había salido para el matinée y que como él había pasado mala noche, se acostó, y estando acostado, se presentó Angela y se sentó al borde de la cama y estando allí sentada llegó Dolores. Que ésta le preguntó a la niña qué hacía y ella contestó que no hacía nada, que ella muchas veces había ido allí y que no le había pasado nada; que la niña salió y se fué tranquilamente; que cuando la niña llegó él estaba acostado y se levantó y que estaba solo en la casa.

Tal fué la prueba de la defensa.

Veamos ahora si se han cometido los errores que señala el acusado.

De la relación de hechos que antecede claramente resulta que el fiscal probó un caso prima facie de violación. Las declaraciones de la niña y del Doctor Roca tienden a demostrar que existió la violación, y las de Dolores Nieves y Rosa Julia Padilla tienden a conectar al acusado con la comisión del delito, existiendo así la corroboración que exige el artículo 250 del Código de Enjuiciamiento Criminal. Por consiguiente, la corte actuó correctamente al someter el caso al jurado. No existe, pues, el primer error.

██ No podemos decir lo mismo con respecto al segundo error.

En sus instrucciones al jurado, al referirse a la prueba de corroboración que exige la ley, el juez inferior se expresó en los siguientes términos:

"De acuerdo con la ley, en casos de violación el acusado no puede ser declarado convicto por la sola declaración de la mujer agraviada a menos que su declaración se corrobore con otras pruebas. La prueba de corroboración no ha de demostrar por sí misma todos los elementos del delito; pero ella siempre debe tender a relacionar al acusado con el delito que se le imputa. En otras palabras, señores del jurado, la prueba de corroboración no tiene que ser, desde luego, de personas que hayan visto cuando se realizó el acto carnal, sino que puede ser cualquier prueba que satisfaga a los señores del jurado en el sentido de conectar al acusado con el delito que se le imputa. *Prueba corroborativa puede serlo la pericial médica de si la niña estaba o no desflorada;* de personas que vieran al acusado con la niña en el momento en que se le imputa que se cometió el acto, y cualquiera otra prueba similar." (Itálicas nuestras.)

La instrucción antes transcrita es manifiestamente errónea y evidentemente perjudicial a los derechos del acusado. Como muy acertadamente dijo el juez inferior, la prueba de corroboración debe tender a relacionar al acusado con el delito que se le imputa. Pero al instruir al jurado que "prueba corroborativa puede serlo la pericial médica de si la niña estaba o no desflorada," incurre en el error de confundir los dos elementos distintos que deben ser considerados por el jurado al apreciar la evidencia en todo caso de violación:

(*a*) la evidencia tendiente a demostrar que la perjudicada ha sido violada y (*b*) aquélla que en adición a la de la perjudicada va dirigida a conectar al acusado con la comisión del delito. La declaración del Doctor Roca única y exclusivamente tiende a demostrar que la niña había sido desflorada, pero en manera alguna conecta al acusado con la comisión del delito.

La evidencia corroborativa que conecta al acusado con la comisión del delito la encontramos en las declaraciones de Dolores Nieves y Rosa Julia Padilla. Incumbía a los señores del jurado apreciar estas dos declaraciones y en caso de darles crédito determinar si suficientemente conectaban al acusado con la comisión del delito. De la conclusión a que ellos llegasen sobre estos dos extremos dependía necesariamente su veredicto. Si no creían estas dos declaraciones o si creyéndolas estimaban que no conectaban al acusado suficientemente con la comisión del delito, en cualquiera de los dos casos el veredicto debería ser favorable al acusado. Pero una vez que la corte les instruyó que la prueba pericial médica podría ser la prueba corroborativa que exige la ley, en nada podía afectar al veredicto la apreciación que el jurado hiciera de las declaraciones de Dolores y Rosa Julia, ya que siguiendo la instrucción de la corte, la declaración del Doctor Roca vendría a suministrarles la corroboración que exige el artículo 250 del Código de Enjuiciamiento Criminal y por lo tanto, aún descartando en absoluto las declaraciones de Dolores Nieves y Rosa Julia Padilla, habría evidencia suficiente para sostener el veredicto de culpabilidad. Pero ésa no es la ley. Tratando del efecto probatorio del informe médico en estos casos, ha dicho este tribunal por voz de su Juez Asociado Sr. Wolf:

"El mero hecho de que la demandante haya sido violada, si es que lo ha sido, no tiende a demostrar que el acusado era culpable; *y la declaración del médico solamente tiende a demostrar que alguien ha tenido acceso carnal a ella.*" (Itálicas nuestras.) *El Pueblo* v. *Maldonado*, 17 D.P.R. 23, 28.

Lo expuesto nos lleva a la irresistible conclusión de que existe el segundo de los errores señalados y siendo éste evidentemente perjudicial a los intereses del acusado, se impone la revocación de la sentencia.

No aparece de los autos que se haya apelado de la resolución denegatoria de la moción de nuevo juicio; pero asumiendo que se hubiera hecho, la conclusión a que hemos llegado al considerar el segundo error nos releva de la obligación de discutir el tercero, pues debiendo devolverse el caso a la corte inferior para la celebración de un nuevo juicio, resultará académica toda discusión sobre dicha resolución.

*Procede revocar la sentencia apelada y devolver el caso a la corte inferior para la celebración de un nuevo juicio.*

El Juez Asociado Señor Travieso no intervino.