*713 TEXTO COMPLETO DE LA SENTENCIA
En este caso, la apelante Gavela Investments, Inc. cuestiona la adjudicación de daños que el Tribunal de Primera Instancia le concedió a la apelada El Tesoro del Coquí, Inc., basándose en la prueba pericial presentada, parte de la cual no debió ser admitida.
Luego de examinar cuidadosamente la transcripción de la prueba oral y de contar con la comparecencia de ambas partes, resolvemos confirmar la sentencia apelada por los fundamentos expuestos a continuación.
I
El Tesoro del Coquí es un negocio que se dedica a la venta de artículos de promoción alegóricos a Puerto Rico, tales como camisetas, carteras, figuras y relojes, entre otros. La corporación del mismo nombre es dueña del local número 4 C-101-A del Condominio La Posada, ubicado en la Avenida Isla Verde. Su presidente es el Sr. Hussein Farhat.
Gavela Investments, Inc. es dueña del local C-201-A del Condominio La Posada, que está ubicado en el piso inmediatamente superior, sobre el negocio El Tesoro del Coquí. Su presidente es el Sr. Felipe Lazcano. Gavela adquirió esa propiedad en julio de 2002 mediante la ejecución de un pagaré hipotecario que gravaba la propiedad. Antes de adquirir el pagaré hipotecario del Banco Popular de Puerto Rico, Gavela inspeccionó y conoció la condición de abandono en que se encontraba el apartamento, el cual estaba lleno de basura, escombros y sabandijas. Además, tenía filtraciones que se colaban al local de El Tesoro del Coquí.
Luego de la adquisición, los dueños de El Tesoro le reclamaron en varias ocasiones a Gavela que corrigiera los defectos de filtración que afectaban su negocio, pero Gavela no los corrigió. Por tal razón, el 19 de diciembre de 2002, El Tesoro del Coquí, Inc. incoó una reclamación en contra de Gavela Investments, Inc., su presidente Felipe Lazcano y otros demandados desconocidos, en la que incluyó dos causas de acción: la primera, un injunction por estorbo, al amparo de los Artículos 277, 675 y 677 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sees. 2761 y 3521 y 3523, y la segunda, por daños y perjuicios.
En la demanda, El Tesoro adujo que antes de adquirir la propiedad de su anterior dueño, los mismos demandados estaban a cargo de la venta de la propiedad abandonada, la que luego adquirieron para sí. Desde que estaba en venta, en varias ocasiones, el dueño de El Tesoro les informó sobre el problema que le ocasionaba el estado de abandono total del local ubicado sobre su establecimiento. Señaló que le solicitó a Gavela el nombre del dueño para resolver la situación que le causaba daños, pero la parte demandada nunca le dio esa información. El Tesoro también alegó que el 7 de noviembre de 2002 le envió una carta a la parte demandada en la que le informó sobre las pérdidas económicas que había sufrido y le concedió veinte días para corregir la situación. Gavela le contestó que había pedido los permisos para botar los escombros y limpiar el local.
En cuanto a la causa de acción por daños, El Tesoro argüyó que la situación descrita en la demanda sucedía desde hacía varios años y le interrumpía el libre uso y disfrute de su propiedad. Reclamó daños ascendentes a $74,400.
Gavela contestó la demanda y negó las alegaciones. A su vez, incoó una demanda contra tercero en contra del Sr. Farid Saker, debido a que éste podía serle responsable a El Tesoro en todo o en parte de la reclamación *714 presentada en su contra por la situación descrita.
Tras los trámites procesales de rigor, en los que las partes acordaron que Gavela repararía las condiciones alegadas en la demanda de injunction por estorbo, el Tribunal de Primera Instancia realizó una inspección ocular del local donde ubica El Tesoro y se percató de que las filtraciones de agua provenían de la propiedad de Gavela. En la minuta que recoge lo acontecido en la inspección ocular se señaló que Gavela “demostró a satisfacción [del tribunal] que tomó las medidas correspondientes y realizó gestiones afirmativas para minimizar el problema de filtración que afecta a ambas partes.” Luego, mediante orden de 7 de mayo de 2003, ese foro ordenó a Gavela a retirar unos paneles deteriorados y a sellar de forma segura unos huecos por los que aún se colaba agua de lluvia. En esa orden expresó:
“[...] En relación a la solicitud de vista de daños, debe quedar claro que lo único atendido en la audiencia de febrero fue lo concerniente al interdicto preliminar. Quedó pendiente de resolver la reclamación por daños y perjuicios. Por lo tanto, señalamos conferencia con antelación al juicio [...]”.
El tribunal apelado celebró la vista del caso el 27 de junio de 2008. Luego de aquilatar la prueba testifical y documental que recibió, dictó la sentencia que declaró con lugar la demanda y ordenó a Gavela Investments, Inc. y otros a pagarle a El Tesoro del Coquí, Inc. $15,000 por las pérdidas estructurales o reparación de su local, $7,000 por los daños económicos y $3,000 por los daños e inconvenientes que tendrá que enfrentar como consecuencia de las reparaciones que tiene que efectuar en el negocio y la pérdida de uso y de ingresos.
El tribunal a quo también determinó que Gavela mostró una actitud temeraria al obligar a El Tesoro a incoar una reclamación judicial, que pudo evitar, y por las dilaciones que ocasionó durante el litigio. Le impuso $2,000 de honorarios de abogado. El Tribunal de Primera Instancia desestimó la demanda contra tercero que presentó Gavela, pues no surgía del récord que se hubiese emplazado a ese tercero. Tampoco surgía reclamación alguna contra el tercero del Informe de Conferencia con Antelación al Juicio y la parte demandada no presentó prueba alguna en el juicio sobre esa reclamación.
Inconforme con la sentencia, Gavela apeló de ella ante nos y plantea que el Tribunal de Primera Instancia cometió cuatro errores: (1) al concluir, sin prueba alguna o sin prueba suficiente, que la parte demandada aceptó la culpa o negligencia en el caso; (2) al aceptar como perito al señor Alberto Rico, sin estar debidamente cualificado, y permitirle declarar y aceptar su informe no anunciado y presentado el mismo día del juicio, compararlo con otra prueba no admitida, aunque fue informada en el informe de conferencia con antelación al juicio; (3) al concluir sin suficiente prueba que se probaron los daños económicos; y (4) al determinar que Gavela fue temeraria y ordenarle pagar honorarios de abogado.
n
Consideremos cada error por separado para una mayor claridad del análisis.
A
En el primer señalamiento de error, Gavela plantea que el Tribunal de Primera Instancia incidió al concluir, sin prueba alguna o sin prueba suficiente, que la parte demandada aceptó su culpa o negligencia por los daños alegados por El Tesoro. A esos efectos, cuestiona lo señalado por el tribunal a quo en la sentencia de que “Gavela admitió su responsabilidad al comprometerse y en efecto arreglar los defectos que reclama El Tesoro”.
Gavela fundamenta este primer error en la minuta del 30 de octubre de 2003, que incluye el acta de la inspección ocular que hizo el Tribunal de Primera Instancia del local donde ubica El Tesoro. En esa minuta, el tribunal a quo hizo constar lo siguiente:
“[...] El demandado demostró a satisfacción que tomó las medidas correspondientes y realizó gestiones *715 afirmativas para minimizar el problema de filtración que afecta a ambas partes.
Preliminarmente, a las preguntas que le formulamos al ingeniero Pérez podemos concluir que la magnitud del problema de filtración está por determinarse, es decir, resulta necesario llevar a cabo evaluaciones periciales adicionales para concluir con mayor precisión y certeza la magnitud y agudeza del problema. A esos efectos se les ordena a los demandados que mantengan informados al Tribunal en los próximos 30 días de las gestiones que habrán de ser realizadas con la Junta de Condómines y la reunión con dicho organismo.
El abogado del demandante ha hecho unas expresiones en tomo a la conformidad de su representado con las reparaciones que han corregido en gran parte o en casi su totalidad el problema de filtraciones.”
(Subrayado nuestro.) Apéndice de la parte apelante, a la págs. 20-21.
Gavela argumenta que corrigió lo que el Tribunal de Primera Instancia le ordenó que corrigiera y que, una vez corregido y realizada la inspección ocular, ese foro determinó que había que “concluir con mayor precisión y certeza la magnitud y agudeza del problema”. Señala que no se probó en momento alguno que los problemas de filtración fueron causados por su culpa o negligencia. Añadió que los problemas existían desde años antes de que la parte apelante adquiriera mediante subasta el inmueble, y que la apelada presentó su demanda dos meses después de ella adquirir la propiedad mediante la ejecución del pagaré que gravaba la propiedad.
De lo expuesto se puede colegir que el argumento de Gavela es que el haber realizado las reparaciones ordenadas por el Tribunal de Primera Instancia, las que efectivamente eliminaron el problema de filtración de El Tesoro, no significó que asumiera la culpa o negligencia por los daños causados a la parte apelada por esas filtraciones. Gavela no tiene razón.
Recordemos que este caso se inició como un injunction por estorbo, al amparo de los Artículos 277, 675 y 677 del Código de Enjuiciamiento Civil, ya citados, y por daños y perjuicios. Con la premura que exigía el recurso y con evidente control del caso por parte del tribunal, la parte apelada logró ese primer remedio. De los autos del caso se desprende que Gavela aceptó corregir los defectos y, al así hacerlo, reconoció su responsabilidad por los alegados estorbos y filtraciones que surgían de su propiedad y dañaban la de El Tesoro. La expresión que hizo el Tribunal de Primera Instancia en la minuta de que era necesario llevar a cabo evaluaciones periciales adicionales para concluir con mayor precisión y certeza la magnitud y agudeza del problema, en nada exime de responsabilidad a Gavela. Una cosa es la magnitud y agudeza del problema y otra cosa es el origen o la causa del problema, que en este caso era el agua que filtraba del apartamento de Gavela al negocio El Tesoro. Asimismo, El Tesoro aceptó que las obras realizadas por Gavela tuvieron el efecto de corregir las filtraciones por las que le reclamó a esa parte. Al no existir ya el problema causante de los daños, ya no existía la necesidad de examinar “la magnitud y agudeza del problema”, señalada en la minuta a la que hace referencia la parte apelante.
Cabe destacar, además, que Gavela acató la orden que le emitió el Tribunal de Primera Instancia para que corrigiera el problema de las filtraciones y procedió a cumplirla. Es decir, el tribunal concedió el remedio interdictal solicitado y esa determinación parcial ya es final y firme. Cuando se cuestionó por la parte apelada que las reparaciones no habían sido satisfactorias, el tribunal realizó una inspección ocular y determinó que no hubo desacato de Gavela, pues había realizado sustancialmente lo acordado. Las dificultades surgidas posteriormente sobre el remedio del interdicto se resolvieron y la reclamación adicional del caso continuó su trámite ordinario. Es decir, resuelta la primera reclamación, lo que faltaba por ventilar en el pleito era la adjudicación de la cuantía de los daños, para lo cual se señaló la Conferencia con Antelación al Juicio y la vista en su fondo.
La cuestión relativa a que lo único que quedaba pendiente por ventilar en el caso era el aspecto de los *716 daños, surge de los autos originales, que hemos examinado con detenimiento. En la minuta de la primera audiencia celebrada ante el Juez Rafael L. Vissepó Vázquez para atender la solicitud del interdicto por estorbo, surge que el abogado de Gavela expresó que ésta estaba “en disposición de llevar a cabo la limpieza del local ubicado en el segundo nivel de la propiedad en los próximos días”. El tribunal señaló en esa ocasión:
“[...] Eso dispone del interdicto preliminar, por lo que el Tribunal no requiere prueba.
De no culminar la limpieza en ese término, se solicitará se encuentre incurso en desacato al demandado, apercibido que podría ordenarse su arresto e ingreso o ser multado.”
A esos fines, bajo juramento ratificaron este acuerdo los señores Felipe Lazcano y José Pagán. [1]
Luego de algunos incidentes procesales relativos al estricto cumplimiento del aludido acuerdo, El Tesoro solicitó el señalamiento de la vista de daños, pero Gavela se opuso mediante moción a esos efectos. Sin embargo, en esa moción, Gavela admitió que la cuestión relativa al interdicto ya había sido resuelta. Señaló: “2. Según surge de la minuta del 12 de febrero de 2003, se dispuso de dicha reclamación mediante acuerdo llegado entre las partes.” No obstante, alegó que no hubo acuerdo sobre la cuestión de los daños por lo que se opuso al señalamiento solicitado. El tribunal acogió la solicitud de El Tesoro y mediante la orden de 7 de mayo de 2003 señaló la conferencia con antelación al juicio para atender únicamente la cuestión relativa a los daños, como ya indicamos.
En el ínterin, El Tesoro presentó una moción de desacato por no haberse removido unos paneles deteriorados, lo que provocó la inspección ocular con el resultado indicado. Hubo consultas para completar la reparación con un ingeniero de El Tesoro, autorizada por el tribunal, y ya para 2006 no se mencionó más el asunto relativo a la causa del estorbo.
El propósito limitado de la vista también surge de la transcripción de lo acontecido en el juicio. Al comienzo de la vista así lo deja saber el Tribunal de Primera Instancia y el Ledo. Américo Martínez Romero, abogado de Gavela, no cuestionó esa apreciación del tribunal a quo. El testimonio fue el siguiente:
“JUEZ:
Bien. Hoy estamos aquí para pasar prueba sobre unos alegados daños.
LCDO. JUAN CARLOS GARAY:
Eso es correcto.
JUEZ:
Solamente de los daños. ¿Por qué? Porque en el Informe de Conferencia Preliminar entre Abogados, eh, en la introducción dice:

“Cónsono con lo anterior, la Parte Demandada aceptó la culpa y/o negligencia al corregir o realizar los trabajos por los cuales se le demandó, etcétera, etcétera. Por lo que sólo resta establecer la cuantía de los daños sufridos, mediante prueba”.

[-•]
LCDO. AMÉRICO MARTÍNEZ ROMERO:
*717 Estamos preparados, Honorable, [...]
(Énfasis en el original.) Transcripción de la prueba oral (T.P.O.), págs. 3-4.
Más adelante, el Ledo. Américo Martínez Romero reconoce que lo que se ventilaría en el juicio sería la adjudicación de los daños, razón por la cual no entregó su parte del Informe de Conferencia con Antelación al Juicio.
JUEZ:
Sí, Oiga, usted sabe que yo nunca tuve la parte suya del informe, del demandado. [É]se es el informe del demandante.
LCDO. AMÉRICO MARTÍNEZ ROMERO:
Sabe, Juez, es que vimos que este se había celebrado la vista. Lo único que estaba pendiente eran los daños. (Subrayado nuestro). T.P.O., a las págs. 34-35.
Ante iguales señalamientos de la apelante en otras partes del juicio, El Tesoro le planteó al Tribunal de Primera Instancia que en la vista no se ventilaría la culpa o negligencia de Gavela, ya que eso se había aceptado previamente. Al final de la vista, el tribunal a quo reiteró que se estaba ante una vista de daños y que eso lo había dicho en la mañana. De la transcripción, surge lo siguiente:
LCDO. JUAN CARLOS GARAY:
Pero, Vuestro Honor, en este caso no estamos viendo la culpa o la negligencia, ya eso se había aceptado.
JUEZ:
Sí, sí, lo que estamos viendo es...
T.P.O., alapág. 111.
JUEZ:
Estamos en una vista de daños, eso lo dije desde por la mañana. ¿Estamos claros? Okey.”
T.P.O., a la pág. 149.
En fin, desde que comenzó el juicio, Gavela admitió que lo que restaba del caso era la adjudicación de los daños. Ya el tribunal había resuelto lo relativo a su responsabilidad al acoger el acuerdo sobre el remedio del interdicto y al emitir las órdenes de corrección que Gavela acató a satisfacción de El Tesoro.
De todos modos, en este caso no era necesario demostrar que Gavela fue negligente, ya que el Artículo 1810 del Código Civil expresamente establece la responsabilidad objetiva o sin culpa del dueño de una propiedad por las cosas que caigan de esa propiedad.
El cabeza de familia que habita una casa o parte de ella es responsable de los daños causados por las cosas que se arrojaren o cayeren de la misma.
*718 31 L.P.R.A. see. 5149.
Así lo interpretó el Tribunal Supremo de Puerto Rico en Berio v. Royal, 164 D.P.R. 797 (2005), a partir de una extensa y reiterada doctrina. Véase Carlos Irizarry Yunqué, Responsabilidad Civil Extracontractual 602 (5ta Ed., 2003); José Puig Brutau, II-III Fundamentos de Derecho Civil 128 (Bosch 1983); Manuel Albaladejo, Dir., XXIV Comentarios al Código Civil y Compilaciones Forales 657-658 (EDERSA 1984), entre otras fuentes allí citadas.
De lo que se trata realmente es de imponer responsabilidad a la persona a la que se le puede atribuir el control de la vivienda, aunque no hubiese sido ella quien arrojó o dejó caer la cosa.
“[...]
[Cjuando se configura la situación que está recogida en el Art. 1810 —que una cosa caiga o sea arrojada de una vivienda y ocasione daños — , la ley nombra un responsable, la “cabeza de familia” o persona que ostente el control de la vivienda, que deberá resarcir los daños independientemente de la diligencia que haya podido desplegar. Esa ausencia de requisito de negligencia, sin embargo, no releva al perjudicado que demanda al amparo de esta disposición de establecer el nexo causal entre la caída del objeto y sus daños y la realidad de los daños sufridos. En cuanto a esos elementos, al igual que en otras situaciones de responsabilidad civil extracontractual, el demandante carga con el peso de la prueba.” [Cita omitida.]
Berio v. Royal, 164 D.P.R., a las págs. 801-802.
No hay duda de que las filtraciones de agua provenían del local de Gavela y no de otro lugar del condominio La Posada. El Tesoro resolvió su problema luego de efectuarse las reparaciones en ese local, como pudo constatarlo el tribunal en la inspección ocular que realizó en el lugar, luego de comenzadas las obras de reparación, precisamente por orden judicial.
Por lo expresado, resolvemos que el Tribunal de Primera Instancia no incurrió en el primer error señalado.
B
En el segundo señalamiento de error, Gavela cuestiona que el Tribunal de Primera Instancia admitiera como perito al Sr. Alberto Rico, sin estar éste cualificado, y que le permitiera declarar, a pesar de que ese testigo no fue anunciado hasta el día del juicio. Asimismo, que admitiera el informe de ese perito y, más aún, que lo comparara con otro informe que no se admitió en evidencia.
El Tesoro anunció en su Informe de Conferencia con Antelación al Juicio un informe de los costos estimados para la reparación del local de El Tesoro, como consecuencia de los daños causados por las filtraciones. Ese informe fue preparado por la firma D.R. Construction, cuyo representante compareció a los señalamientos previos al juicio, los que se suspendieron por actuaciones atribuibles única y exclusivamente a Gavela. Esta parte no depuso al perito que preparó el aludido y anunciado informe ni presentó prueba pericial para refutarlo.
A la fecha del juicio, El Tesoro no pudo dar con el paradero del representante de D.R. Construction, porque no se encontraba en Puerto Rico. Entonces, presentó el informe que realizó esa firma, como prueba ofrecida y no admitida. Ante esa situación, El Tesoro contrató los servicios de CIMA Construction Int./Ext. Corp. para que hiciera un nuevo estimado de costo de las reparaciones. El Sr. Alberto Rico, en representación de CIMA, inspeccionó la propiedad y dos semanas antes del juicio rindió un informe a El Tesoro sobre las reparaciones que había que hacer en su local.
*719 El Tribunal de Primera Instancia cualificó como perito al Sr. Rico, quien testificó sobre el informe que preparó, en el que estimó que el costo de los trabajos a realizarse ascendía a $15,500 para junio de 2008; que el tiempo estimado para realizarlos tomaría cuarenta y cinco días; y que la realización de las reparaciones interferiría con el negocio de El Tesoro, por lo que las ventas se reducirían en no menos de un 30%.
Gavela objetó la admisibilidad del informe presentado por el Sr. Rico y el tribunal a quo declaró la objeción no ha lugar. (T.P.O., a la pág. 117.) El foro señaló en su sentencia que el informe del Sr. Rico sobre el estimado de costos de reparación concordaba sustancialmente con los costos de reparación que cotizó años atrás D.R. Construction. Además, que El Tesoro no pudo localizar el paradero de los funcionarios de esa entidad, quienes se presentaron a las distintas vistas pautadas para juicio y que fueron suspendidas por razones atribuibles únicamente a Gavela y a su abogado. Por tal razón, el tribunal a quo concluyó que el testimonio del Sr. Rico no le causó sorpresa ni perjuicio alguno a Gavela, debido a que su informe era sustancialmente igual al que sometió D.R. Construction. Además, indicó que ante la ausencia de prueba de clase alguna y de preparación por parte de Gavela para refutar el informe anterior, entendía que Gavela se allanó a lo que probara El Tesoro durante el juicio. Por lo dicho, el Tribunal de Primera Instancia consideró probado el costo de reparación sometido por CIMA, por conducto del Sr. Rico.
El problema que levanta la presentación de este testigo pericial es que la parte apelada no lo anunció como testigo, en sustitución de D.R. Construction, ni le notificó el contenido de su informe a Gavela antes del juicio, sino que lo presentó como tal el mismo día de la vista. CIMA entregó el informe a El Tesoro dos semanas antes del juicio, por lo que esta parte debió anunciar al Sr. Rico como su nuevo testigo y notificarle copia de su informe a Gavela antes del juicio. El hecho de que el contenido del informe del Sr. Rico sobre el costo de las reparaciones fuese sustancialmente igual al informe preparado por D.R. Construction no subsana la falta de notificación a la parte apelante. Ante esta situación, alega esta parte que el Tribunal de Primera Instancia no debió permitir la presentación del Sr. Rico como perito en el caso.
En Vélez Rodríguez v. Amaro Cora, 138 D.P.R. 182, 194 (1995), el Tribunal Supremo sostuvo la decisión del Tribunal de Primera Instancia de no permitir testificar a un perito que no fue mencionado en el Informe de Conferencia con Antelación al Juicio. Claro, en el caso de autos, la parte apelante no colaboró en la redacción del informe de conferencia entre abogados, según admitió, aunque tal parece que recibió copia del informe pericial original. Por sus propias actuaciones u omisiones, no depuso ni confrontó al perito anterior y no anunció otra prueba para refutar el estimado de costos. A base de esta particular circunstancia, el Tribunal de Primera Instancia concluyó que el informe producido por el Sr. Rico comparaba sustancialmente con el informe que realizó D.R. Construction unos años antes, en cuanto a los trabajos de reparación que había que hacer y en cuanto al costo de esos trabajos.
Lo que realmente resolvió el tribunal a quo es que el contenido del nuevo informe no era desconocido ni sorpresivo para Gavela, pues ésta tenía en sus manos el informe de D.R. Construction con igual propósito y contenido.
Aunque nos parece razonable la apreciación que hizo el Tribunal de Primera Instancia, lo cierto es que el informe preparado por D.R. Construction no fue admitido en evidencia. [2] El Tesoro hizo la correspondiente oferta de prueba y así surge del récord.
Las Reglas 4 y 5 de Evidencia, 32 L.P.R.A. Ap. IV, R. 4 y 5, respectivamente, disponen que no se revocará sentencia alguna por motivo de la admisión o exclusión errónea de evidencia, a menos: (1) que la parte interesada efectivamente haya objetado oportuna y correctamente esa admisión o exclusión, y (2) que el tribunal revisor considere que la referida admisión o exclusión fue un factor decisivo y sustancial en la sentencia apelada. Cuando la parte interesada en la revocación de una determinación alegue que el foro recurrido erró al excluir evidencia admisible, debe realizar su objeción oportuna y correcta mediante una oferta de prueba.
*720 Según los comentarios que acompañan las Reglas 4 y 5 de Evidencia, el texto de ambas reglas recoge “la doctrina del error perjudicial, en virtud de la cual sólo los errores sustancialmente perjudiciales a la parte afectada llevan consigo la revocación, siempre que hubiera mediado oportuna objeción en el [foro recurrido]... El criterio para medir la magnitud del efecto del error cometido es la probabilidad de influencia sustancial en el resultado.” Así lo ha reiterado la jurisprudencia del Tribunal Supremo de Puerto Rico. Véase, Pueblo v. Sánchez Molina, 134 D.P.R. 577, 595-596 (1993); Pueblo v. Ruiz Bosch, 127 D.P.R., a las págs. 784-786; Pueblo v. Rosaly Soto, 128 D.P.R. 729, 744-745 (1991); Pueblo v. Martínez Solís, 128 D.P.R. 135, 162-163 (1991); Pueblo v. Fournier, 77 D.P.R. 222, 278 (1954), y Pueblo v. Oquendo, 83 D.P.R. 234, 241-242 (1961), entre otros.
El propósito de la oferta de prueba es constituir un récord completo de la prueba que se presentó durante la vista para luego, en la etapa apelativa, poder plantear como error la exclusión de esa prueba. Ante el foro apelativo, la oferta de prueba es imprescindible para determinar si la evidencia excluida puede justificar un resultado distinto del caso de haber sido admitida y creída por el foro recurrido. Véase, Pueblo v. López Rivera, 102 D.P.R. 359, 368 (1974).
A pesar de lo dicho, somos conscientes de que la Regla 6 de Evidencia, 32 L.P.R.A. Ap. IV, R. 6, dispone que “[n]ada de lo dispuesto en las Reglas 4 y 5 impedirá que un tribunal apelativo considere errores crasos y perjudiciales de admisión o exclusión de evidencia, a pesar de no haber mediado oportuna objeción, cuando el no corregir dichos errores resulte en un fracaso de la justicia.” Véase a Pueblo v. Carrión Rivera, 111 D.P.R. 825, 829 (1981), y Pueblo v. Ruiz Bosch, 127 D.P.R. 762, 783 (1991).
Claro, en todo caso debemos contar con criterios confiables que nos permitan concluir que la exclusión de la prueba presentada u ofrecida fue arbitraria o corroborar si, efectivamente, era admisible en el juicio. Aunque el Tribunal de Primera Instancia no debió admitir la presentación del nuevo testigo pericial, porque no fue anunciado antes del juicio y su informe no le fue notificado con suficiente antelación a la parte contraria, pudiendo hacerlo, lo cierto es que este segundo error no fue perjudicial y no justifica la revocación de la sentencia, pues en el juicio se presentó suficiente prueba para sostener la reclamación de los daños sufridos por el local de El Tesoro que requerían su inmediata corrección para poner a la apelante en condiciones de continuar su negocio.
Por lo dicho, concluimos que el segundo error no fue perjudicial, lo que queda fundamentado con la discusión del tercer error.
C
En el tercer señalamiento de error, Gavela plantea que el Tribunal de Primera Instancia incidió al considerar probados los daños económicos, a pesar de que no se presentó prueba suficiente para ello. A esos efectos, Gavela alega que el testimonio del Sr. Angel L. Figueroa, contador de El Tesoro, fue flaco y descamado y no contó con prueba alguna que lo sustentara, sino que se basó en la información que le proveyó la parte apelada. Además, señaló que el contable reconoció que no contaba con facturas de compra, ni con planillas de contribución sobre ingresos ni corporativas que demostraran las pérdidas reclamadas.
En cuanto a este señalamiento de error, la parte apelada sostiene que la prueba oral es tan buena como la prueba documental y que queda a la discreción del juzgador de los. hechos determinar cuál prueba es creíble y cuál no. Por tal razón, al tener el Tribunal de Primera Instancia ante sí el testimonio del contable y haberle dado el peso probatorio que ameritaba, la parte recurrida señala que este Tribunal no puede sustituir el criterio del tribunal a quo por el suyo, máxime cuando la parte apelante no presentó prueba alguna para refutar el testimonio que ahora impugna.
Advertimos que la Regla 10 de Evidencia, en su inciso (d), 32 L.P.R.A., Ap. IV, R. 10, dispone que “[l]a *721 evidencia directa de un testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que por ley otra cosa se disponga”. Al aplicar esta regla, el Tribunal Supremo reiteradamente ha reconocido que basta el testimonio de un sólo testigo con conocimiento personal de la materia objeto del litigio, que le merezca credibilidad al tribunal, para establecer cualquier hecho. Miranda Soto v. Mena Eró, 109 D.P.R. 473, 481-482 (1980); Pérez v. Acevedo Quiñones, 100 D.P.R. 894, 899 (1972).
Procede, entonces, examinar las determinaciones que hizo el Tribunal de Primera Instancia respecto al testimonio del contable. El tribunal a quo determinó que el Sr. Figueroa era la persona a cargo de confeccionar las planillas contributivas de El Tesoro; que éste realizó un informe de los costos y pérdidas sufridas por El Tesoro, que estaban directamente relacionadas con las filtraciones que sufrió la parte demandante; que el informe estuvo basado en la información que le suplió la parte demandante y que cubría el período del 7 de noviembre de 2002 hasta el 31 de diciembre de 2004, período en el cual ya Gavela era dueño de la propiedad en controversia; que el costo estimado de las pérdidas para ese período era de $14,315; que el informe preparado utilizaba un método de depreciación lineal para las pérdidas, lo que constituía la manera usual de calcular y depreciar las pérdidas en contabilidad; y que el contable estableció que El Tesoro perdería ingresos al realizarse los arreglos a la propiedad, ya que las obras tomarían 45 días en realizarse y en ese período el espacio para la venta y exhibición de la mercancía se verían limitados.
Hemos tenido el beneficio de examinar la transcripción de la prueba oral en el caso, luego de lo cual resolvemos que las determinaciones de hechos incluidas por el Tribunal de Primera Instancia en su sentencia están sostenidas por la prueba presentada, en este caso, por el testimonio del contable de la parte demandante y del Sr. Hussein Farhat, testimonios a los cuales el Tribunal de Primera Instancia les dio entera credibilidad. Nuestro ordenamiento nos impide, como foro apelativo, intervenir con esas determinaciones en ausencia de error, pasión, prejuicio o parcialidad, ninguno de las cuales está presente en este caso. Meléndez v. Caribbean Inf l News, 151 D.P.R. 649, 664 (2000).
El Sr. Figueroa testificó sobre el informe que preparó para estimar las pérdidas económicas sufridas por El Tesoro. Este indicó que se entrevistó con la parte demandante, quien le detalló los gastos, mercancía, materiales y paneles que se dañaron. Además, se le proveyeron facturas. T.P.O., a la pág. 130. El contable indicó que distribuyó equitativamente las pérdidas por el período; y que debido a que no tenía una base determinada, partió de la base de que se vendía la misma cantidad en todo momento. T.P.O., a la pág. 132. El Sr. Figueroa determinó que la pérdida total de la mercancía ascendía a $7,935. T.P.O., a la pág. 135. Luego, indicó que, según su informe, la pérdida de El Tesoro ascendía a más de catorce mil dólares, para el período del 7 de noviembre de 2002 al 31 de diciembre de 2004. T.P.O., a la pág. 137.
Por su parte, el Sr. Farhat testificó sobre las pérdidas de mercancía y propiedad que sufrió su negocio y presentó fotografías al respecto. A esos efectos, indicó que los daños consistían en materiales, ropa y souvenirs que estaban debajo de donde caía el agua; que el agua caía del techo y de la pared y en varias ocasiones se cayeron las lámparas y parte del techo; que tenía que poner muchos cubos para recoger el agua y evitar los daños; que el piso también se manchó; que el agua que caía era mucha debido a que el segundo piso de Gavela no tenía ventanas; que se dañó un plástico por el cemento que caía de arriba; que se dañaron también anaqueles como consecuencia del agua; y que entre la mercancía había polos, camisetas, pantalones cortos, carteras de cuero y de tela, platos, vasos y diferentes cerámicas. El Sr. Farhat estimó los daños de la mercancía en $5,500. T.P.O., a las págs. 9-12, 25-26, 32-40,45-47.
El Tribunal de Primera Instancia determinó el costo de reparar los daños a base de la prueba que tuvo ante sí. Gavela no presentó prueba ni refutó con otra de igual calidad la prueba de daños y de costos que presentó El Tesoro. Hemos visto las fotografías admitidas en evidencia que muestran gráficamente la magnitud de los efectos del agua sobre el local del apelado. Al aplicar el criterio de la preponderancia de prueba que rige en los casos civiles, procede la confirmación de las cuantías adjudicadas en la sentencia. La preponderancia de la *722 prueba presentada por esa parte sobre la ofrecida por la parte apelante es evidente. Las fotos de los estragos provocados por las filtraciones y ios testimonios presentados por El Tesoro demostraron la existencia de los daños y la necesidad de repararlos para operar su negocio. La cuantía de $15,500 nos parece razonable para la magnitud de los daños observados en la prueba documental.
Resolvemos que el Tribunal de Primera Instancia determinó el costo de reparar los daños a base de la prueba que tuvo ante sí, por lo que no procede modificar las cuantías adjudicadas. No tenemos criterios para alterar tal determinación. Resolvemos que el tercer señalamiento de error no se cometió.
D
En el cuarto señalamiento de error, Gavela cuestiona la determinación del tribunal a quo de imponerle honorarios de abogado. Señala que de la prueba no surgía temeridad alguna de su parte, debido a que el problema que generó la demanda perjudicaba tanto a la parte demandante como a la parte demandada. La parte apelante no tiene razón.
La Regla 44.1 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 44.1, establece lo referente a los honorarios de abogado. Esa regla establece en su inciso (d) que “en caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda que correspondan a tal conducta”. De ahí que la imposición de honorarios es imperativa una vez el tribunal ha determinado la existencia de temeridad. Blas v. Hosp. Guadalupe, 146 D.P.R. 267, 334 (1998).
El concepto de temeridad no está expresamente definido en la Regla 44.1(d), supra, pero el Tribunal Supremo lo ha definido ampliamente en la jurisprudencia y ha señalado que, en términos generales, “se considera temeraria toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias”. Blas v. Hosp. Guadalupe, 146 D.P. R, a las págs. 334-335. La Regla pretende castigar a aquel litigante perdidoso que por su obstinación, terquedad, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. Rodríguez v. T.O.L.I.C., res. el 30 de mayo de 2007, 171 D.P.R._(2007), 2007 J.T.S. 104, a las págs. 1501-1502, que reitera a O.E.G. v. Román, 159 D.P.R. 401, 418 (2003); Domínguez v. G.A. Life, 157 D.P.R. 690, 706 (2002).
El Tribunal Supremo ha establecido algunas situaciones en que se ha determinado temeridad. Entre esas situaciones están el provocar el inicio de un litigio que se pudo evitar, prolongar innecesariamente un pleito, causar que otra parte incurra en gestiones evitables, negar la certeza de un hecho cuando el que hace la alegación responsiva conoce que es cierto y defenderse injustificadamente de la acción. Fernández v. San Juan Cement Co., Inc., 118 D.P.R. 713, 718-719 (1987). A su vez, el Tribunal Supremo ha señalado que existen varios elementos que deben tomarse en consideración cuando se imponen honorarios por temeridad. Entre esos elementos están la naturaleza del litigio, las cuestiones de derecho involucradas, la cuantía de la controversia, el tiempo invertido, los esfuerzos y la habilidad profesional que haya tenido que desplegarse y la habilidad y reputación de los abogados involucrados. Corpak, Art Printing v. Ramallo Brothers, 125 D.P.R. 724, 738 (1990).
La condena de honorarios de abogado, conforme a la Regla 44.1(d) de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 44.1(d), “depende exclusivamente de la determinación que haga el magistrado que presidió el proceso respecto a si la parte perdidosa, o su abogado, actuaron o no en forma temeraria o frívola”. Corpak, Art Printing v. Ramallo Brothers, 125 D.P.R., a la pág. 736. A su vez, la determinación de si una parte ha actuado o no con temeridad descansa en la discreción del tribunal, por lo que los tribunales revisores sólo intervendrán cuando surja de tal actuación un claro abuso de discreción. Rodríguez v. T.O.L.I.C., 2007 J.T.S. 104, a la pág. 1502, que reitera a P.R. Oil v. Dayco, 164 D.P.R. 486, 511 (2005).
*723 En el caso de autos, el Tribunal de Primera Instancia determinó expresamente en su sentencia que Gavela desplegó una actitud temeraria durante el proceso. Concurrimos con ese dictamen. Gavela debió actuar para corregir la situación de las filtraciones de agua que bajaban de su apartamento y que afectaban a El Tesoro tan pronto esta parte se lo informó extrajudicialmente. Al no hacerlo, obligó a El Tesoro a incoar este pleito que muy bien pudo evitarse. Además, según lo determinado por el tribunal a quo, Gavela se comprometió a corregir el problema luego de que el Tribunal de Primera Instancia realizó una inspección ocular, obligación que incumplió parcialmente y que hizo que el foro apelado le ordenara, so pena de desacato, que corrigiera definitivamente los problemas que le ocasionaba a El Tesoro por las filtraciones y los escombros.
Nos llama la atención el tiempo que tomó la solución de este pleito simple y sin ninguna complejidad jurídica o procesal. Y ese retraso puede atribuirse a la actuación de Gavela. Surge de los autos originales que por falta de atención de unas órdenes judiciales, el 18 de marzo de 2004, la juez asignada al caso anotó la rebeldía a Gavela sobre la primera causa de acción, como sanción, la que luego dejó sin efecto. Mientras, las filtraciones se corrigieron, la segunda causa de acción siguió su rumbo, y desde 2006, El Tesoro no reclamó acción alguna judicial sobre esa primera causa de acción.
El pleito se extendió por dos años adicionales en los que Gavela cambió de abogado en dos ocasiones. El tercer abogado asumió su representación en mayo de 2006, y en septiembre, fecha en la que estaba señalado el juicio, manifestó que no estaba preparado para ello. El juicio se suspendió y se reseñaló para diciembre de ese año, cuando fue nuevamente suspendido a petición, en ambas ocasiones, de Gavela. El caso fue pautado para febrero de 2008, fecha en que Gavela solicitó nuevamente la suspensión. Ésta le fue denegada, con apercibimiento de anotarle nuevamente la rebeldía. Aún así, Gavela ni su abogado comparecieron al juicio. Ante el reclamo de El Tesoro sobre las ocho suspensiones del caso, seis de las cuales eran atribuibles a Gavela, y de esas seis, cuatro del juicio en su fondo, el tribunal a quo resolvió imponerle sanciones económicas al abogado y advertirle de la anotación de rebeldía y la eliminación de sus alegaciones. Envió copia de la minuta a Gavela. También notamos que el tribunal ya le había advertido a Gavela sobre su incumplimiento con la obligación de presentar su parte del Informe de Conferencia con Antelación al Juicio. Aunque pidió una prórroga para someterlo, Gavela no presentó el documento antes del juicio. De hecho, el juicio se celebró sin ese importante recurso procesal.
Ante este cuadro, el Tribunal de Primera Instancia no abusó de su discreción al imponerle honorarios de abogado por temeridad a Gavela, por lo que el cuarto error señalado no se cometió.
m
Por los fundamentos expresados, se confirma la sentencia apelada.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2010 DTA 16

. La minuta fue notificada a las partes el 26 de febrero de 2006.

. Nos preguntamos si ese informe pudo admitirse como una de las excepciones a la Regla 64(5) de Evidencia de 1979, sobre las excepciones a la prueba de referencia, aunque no hemos de atender la cuestión en este caso, por innecesaria.